UNITED STATES of America,
Plaintiff-Appellee,

v.

John Ansel BRIGHT, Defendant-
Appellant.

No. 72–2657.

United States Court of Appeals,
Fifth Circuit.

Jan. 8, 1973.

As Modified on Denial of Rehearing
Feb. 14, 1973.

Nicholas F. Maniscalco, Atlanta, Ga., Court-appointed, for defendant-appellant.

John W. Stokes, Jr., U. S. Atty., P. Bruce Kirwan, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and THORNBERRY and MORGAN, Circuit Judges.

THORNBERRY, Circuit Judge:

John Ansel Bright appeals from a conviction for knowingly possessing a sawed-off shotgun that was not registered to him, in violation of 26 U.S.C. § 5861(d).[1] The events leading to Bright's conviction began on February 26, 1972, when appellant's wife Ruby told two Atlanta policemen that her husband was armed and was looking for her and her daughter in the vicinity of the Regency Hyatt House Hotel, where Ruby, a cab driver, often picked up fares. She told the officers further that her husband would be driving a white or gray 1962 to 1964 Chevrolet with a South Carolina tag, and that she had sworn out a peace warrant against him at the Fulton County Sheriff's Department. The officers immediately began a surveillance of the Hyatt House vicinity, and roughly thirty minutes later saw appellant reconnoitering the hotel taxi stand in a car matching the description Ruby had given them. They stopped the Chevrolet; Officer Foster approached appellant's car from the driver's side, ascertained appellant's identity, and asked him to step out of his car. In doing so, Foster observed a portion of the butt of a rifle or shotgun, partially covered by a jacket, protruding from un-

---

1. § 5861. Prohibited acts
It shall be unlawful for any person—
   *    *    *    *    *

(d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record; . . . .

der the front passenger seat. Officer Bolding, who had remained at the rear of appellant's car, did not see the gun butt. The officers frisked appellant and locked him inside the police car, and verified the existence of a peace warrant against him. He was then formally arrested on the peace warrant and warned of his rights. With Bright still locked in the police car, the officers returned to the Chevrolet, where Officer Foster retrieved the shotgun from under the passenger seat.

■ Appellant raises three points on appeal, the first of which is that the officers lacked probable cause to stop his car and frisk him. At a minimum, he argues, the officers should have first obtained positive ·identification of Ruby Bright and verified the existence of a peace warrant. On the contrary, we believe that Ruby's statements to the officers, largely corroborated by their own observations of appellant's conduct prior to the arrest, were sufficient to warrant men of prudence and caution in believing that an offense was in the making. Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959). Given these reasonable grounds for action, the officers would have gained nothing by verifying Ruby's identity and the existence of a peace warrant. Ruby's name and her relationship to appellant could of themselves have had no bearing on the reliability of her claim that appellant intended to harm her. Nor could the existence or nonexistence of the peace warrant have reasonably influenced the officers' assessment of Ruby's claim; appellant's counsel tells us that almost anyone with a grievance, real or imagined, could obtain a peace warrant in Georgia. Therefore, we hold that the officers had probable cause to stop appellant's car. Since

the pat-down of appellant's person yielded no evidence introduced at trial, we intimate no view as to its propriety.

■ Therefore, we turn to appellant's contention that Officer Foster's warrantless seizure of the sawed-off shotgun from the Chevrolet violated Fourth Amendment standards.[2] As we have seen from the foregoing discussion, the officers had probable cause to stop Bright and approach his car. Regardless of the reasonableness of the initial intrusion, however, searches and seizures must generally satisfy the Fourth Amendment's warrant requirement. "Searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357, 88 S. Ct. 507, 514, 19 L.Ed.2d 576. One such exception to the warrant requirement is the so-called "plain view" doctrine, holding that evidence obtained in a warrantless seizure is admissible if inadvertently discovered by an officer rightfully in a position that afforded full view of the evidence. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (plurality opinion of Stewart, J.) ; Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968) ; Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). Here, as we have noted, officer Foster was rightfully in a position to see the gun butt under the passenger seat, because he had probable cause to stop and approach appellant's car. The trial judge expressly found that the gun butt was in full view of Foster when he first approached the car to obtain appellant's identification, and the record supports this finding. His discovery of the gun

---

2. We note that the instant case is factually distinguishable from a case recently before another panel of this Court, United States v. Ragsdale, 5th Cir. 1972, 470 F.2d 24. In both cases, only one of the arresting officers saw the partially concealed evidence when the suspect was first stopped ;

In *Ragsdale*, however, the subsequent seizure was made by the officer who had not initially discovered the evidence, while the seizure in the instant case was made by the same officer who had spied the gun butt when Bright was initially stopped.

was obviously inadvertent; although Foster had been warned that appellant was armed, he had no reason to believe that a gun would be partially concealed under the passenger seat. Finally, the incriminating character of the evidence was apparent to Foster upon his initial discovery of the gun. Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L. Ed.2d 542 (1969) (Black, J., concurring). When appellant's car was stopped, the officers were acting to interdict an armed assault on Ruby, and the mere presence of *any* weapon would justify seizure under such circumstances, regardless of its apparent character under the Georgia concealed weapons statute or the federal firearms law. Officer Foster's seizure of the shotgun thus satisfied the plain view exception to the warrant requirement.

Finally, appellant challenges on Fifth Amendment grounds the statute under which he was convicted. At the time of his arrest, Bright was on parole from a federal felony conviction, and his possession of the shotgun was a ground for revoking his parole. 18 U.S.C.App. §§ 1201–1203. In order for him to avoid liability under the National Firearms Act, it was necessary that the shotgun be registered in his name. 26 U.S.C. § 5861(d). Thus, Bright argues, in order for him to escape liability under Section 5861(d), he would have had to supply information that would have incriminated him by subjecting him to parole revocation.

■ A reading of the statute itself demonstrates that appellant's position is untenable. If Bright was, in the statutory language, a "transferee" of the shotgun, then he was not required to register the gun himself. In Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722,

19 L.Ed.2d 923 (1968), the Court held that the requirement then in the statute that one presently in possession of a covered firearm must himself register it, violated Fifth Amendment self-incrimination standards. The *Haynes* decision was followed by an amendment eliminating that requirement. Now, the only persons who must themselves register a covered firearm are the manufacturer, maker, or importer, and the transferor, who must register the firearm in his transferee's name. 26 U.S.C. § 5841(b).[3] Thus, while a transferee may still be prosecuted for possessing a firearm not registered to him, 26 U.S.C. § 5861(d), he can no longer "comply" with that section by registering the gun himself. Therefore, if Bright was a transferee, Section 5861(d) did not compel him to furnish information that might result in a parole revocation. United States v. Freed, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971).

■ The same result would follow even if Bright was among those persons required by Section 5841(b) to register the gun in their own names (i. e., manufacturer, maker, or importer). Another amendment to the National Firearms Act spurred by the decision in *Haynes, supra,* prohibits the direct or indirect use of any information obtained from firearm registration as evidence against the registrant "in a criminal proceeding" with respect to a violation of law that occurred prior to or concurrently with the registration. 26 U.S.C. § 5848. This "use immunity" provision would undoubtedly prohibit the use in a parole revocation proceeding of any information obtained from registration of the shotgun. First, a parole revocation proceeding, subjecting the parolee to imprisonment, is assuredly a "criminal proceeding."[4] Secondly, a revocation pro-

---

3. § 5841. Registration of firearms

    \*    \*    \*    \*    \*

    (b) By whom registered.—Each manufacturer, importer, and maker shall register each firearm he manufactures, imports, or makes. Each firearm transferred shall be registered to the transferee by the transferor.

4. Our holding in this respect is limited to an interpretation of the language of 26 U.S.C. § 5848. The question whether a parole revocation proceeding is a criminal proceeding for purposes of applying due process guarantees is not before us in the instant case, and we intimate no views on that question.

ceeding based on Bright's registration, and thus his possession, of the shotgun would obviously relate to a violation of law (possession of a firearm by a felon) that occurred "prior to or concurrently with" the registration of the shotgun. From our reading of the statute, we are thus in agreement with the assurance by the United States Attorney at oral argument that no information obtained from Bright's registration of the shotgun would be available for use in a parole revocation proceeding.

Therefore, regardless of whether Bright was a "transferee" or a "manufacturer, importer, or maker" of the shotgun, his Fifth Amendment challenge to Section 5861(d) must fail.

Affirmed.