UNITED STATES of America,
Plaintiff-Appellee,

v.

Melvin A. JAMES,
Defendant-Appellant.

No. 75–1790.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 9, 1976.

Decided April 5, 1976.

Donald L. Bach, Madison, Wis., for defendant-appellant.

David C. Mebane, U. S. Atty., Madison, Wis., for plaintiff-appellee.

Before TONE and BAUER, Circuit Judges, and HOFFMAN, Senior District Judge.[*]

BAUER, Circuit Judge.

Melvin James was indicted in the Western District of Wisconsin for violating Title

---

[*] The Hon. Julius J. Hoffman, United States District Court for the Northern District of Illinois, is sitting by designation.

26 U.S.C. §§ 5845(a)(1), 5861(d), and 5871 (possession of a sawed-off shotgun and failing to register such a weapon). On appeal he presents three arguments: (1) that the federal indictment should have been dismissed because he received a promise of immunity from prosecution; (2) that the registration requirement violates his Fifth Amendment right not to incriminate himself; (3) that this federal prosecution places him in double jeopardy in violation of the Fifth Amendment. We affirm.

The facts in the record show that James was arrested by two City of Madison, Wisconsin, police officers in a tavern. At the time of his arrest the defendant had in his possession a loaded sawed-off shotgun. The officers went to the bar to arrest James because he had failed to return to the county jail where he was serving a previous sentence in a work release capacity.

James was returned to the county jail where he was interviewed by agents of the United States Treasury Department, Bureau of Alcohol, Tobacco and Firearms ("ATF") Agent Warren Hansen informed James that possession of the sawed-off shotgun was a federal violation and that a case report was being filed. Another ATF agent, Richard Brown, who accompanied Hansen, informed James that the decision to pursue the case on a federal level was up to the United States Attorney. James claims that during this interview one of the agents told him that if he waived the formal parole revocation procedures by the state, pleaded guilty to the state gun charges, and served the remaining period of incarceration that the federal authorities probably would not prosecute.

James, after talking to the ATF agents, contacted his appointed attorney, Robert Burke. He asked attorney Burke to arrange an understanding that if he pled guilty on the state charges no indictment would be presented on the federal charges. The defendant alleges that his attorney, Burke, told him that if he would enter a plea of guilty on the state charges and sign a parole revocation waiver that the federal government would not press additional charges.

Subsequently, James pleaded guilty and voluntarily waived his parole revocation hearings. It was his understanding at that time that he had 18 months left to serve on an original burglary charge. Later, after he was returned to the Green Bay prison facility, it was established that the State of Wisconsin authorities had made a mistake as to his mandatory release date and James was released.

Following his release James was indicted by the federal authorities. He presented a motion to suppress any evidence of the shotgun or statements he made to the federal authorities on the basis that he had received a promise of no prosecution in the federal court. The court held an extensive evidentiary hearing and found that no authorized commitment was made which would preclude the criminal prosecution. Trial was held on June 25, 1975. James waived his right to a jury trial, stipulated that the government could present its evidence by summary, renewed his pretrial objections, and presented no additional evidence on his own behalf. The court found James guilty and he pursues this appeal.

## I. THE MOTION TO DISMISS THE INDICTMENT WAS PROPERLY DENIED SINCE THE DEFENDANT DID NOT RECEIVE A COMMITMENT FROM THE FEDERAL AUTHORITIES NOT TO PROSECUTE.

■ The key point of the argument that James presents on appeal is that he is being denied the benefit of the plea bargain which he entered. He seeks specific performance of an agreement which he claims was made with the federal authorities. We agree with James that under the Supreme Court decisions in *Brady v. United States,* 397 U.S. 742, 751–2, 90 S.Ct. 1463, 1470–71, 25 L.Ed.2d 747, 758–59 (1970); *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), once a valid plea bargain is struck between the government and the defendant, the government is bound to carry out its side of the bargain or relief is warranted. But in this case a review of the facts presented indicates that no valid bargain or agreement was ever reached between James and the government.

Burke, the defense attorney for James, testified that he asked Agent Hansen of the ATF whether the defendant would be prosecuted federally if he chose to serve his remaining time in state prison. Hansen replied to the effect that there had been previous occasions in which federal prosecution was not brought in connection with a firearms violation when state imprisonment for the defendant had resulted from the same incident. However, attorney Burke testified that at no time during his conversation did the agent say that the James case would not be prosecuted federally in the event that he went to prison on state charges. Burke stated further that he knew that only the United States Attorney, as opposed to agents of the ATF, could make the decision whether or not to initiate federal criminal prosecution. In addition Burke candidly admitted that his failure to contact the United States Attorney with respect to the statements made to him by the investigating agent was an oversight on his part. In light of this testimony we are of the opinion that the facts clearly and unequivocally support the trial court's finding that no commitment was made which would preclude the federal government from instituting a criminal prosecution against the defendant.

James has also presented the argument that the government should be bound by the promise of one of its agents. The government has responded that, assuming *arguendo* that a promise was made, it still is not bound since an agent of the ATF does not have the authority to make such a promise on behalf of the government. We need not consider this argument in depth since the facts demonstrate that no commitment was made and it is unnecessary to question whether the agent had authority to make a promise not to prosecute.

We note that the defendant is not left totally without a remedy in this particular situation. The government admits, as the trial court found, that the accuracy of the representations made to James by his defense counsel, or his misunderstanding of his legal position as a result of conversations with ATF agents, may well have af-fected the voluntariness of his guilty pleas and waivers in state court. Therefore he may be entitled to relief should he challenge those proceedings. We realize, of course, that the alternative of returning to state court now that James has been released may not be desirable. Nevertheless we cannot find any support in the record for James' assertion that his indictment and conviction violates principles of fundamental fairness and due process. His predicament is the result of his failure to secure a commitment from the federal prosecutor before waiving his rights in state court.

## II. THE REPORTING REQUIREMENTS OF THE NATIONAL FIREARMS REGISTRATION AND TRANSFER RECORD ACT DO NOT COMPEL THE DEFENDANT TO INCRIMINATE HIMSELF IN VIOLATION OF THE FIFTH AMENDMENT.

The defendant next contends that since he was a previously convicted felon the indictment returned against him herein for the possession of an unregistered firearm contrary to the provisions of Title 26 U.S.C. § 5861(d) and 26 U.S.C. § 5871 is a violation of his Fifth Amendment right against self-incrimination, since an attempt to register or insure registration, or provide information necessary for such registration, would be an admission of a violation of 18 U.S.C. § 922 or 18 U.S.C., App. § 1202 and § 1203.

Defendant bases his argument on the rationale of *Haynes v. United States,* 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968), and an attempt to distinguish between the case at bar and *United States v. Freed,* 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971).

In essence, *Haynes* held that provisions of the National Firearms Control Act, 26 U.S.C. §§ 5841, 5848, and 5851, in effect at the time, were invalid under the self-incrimination clause of the Fifth Amendment to the Constitution because the Act compelled the possessor of a weapon to disclose the fact of his possession by registration at the time he acquired possession, thus compelling a person to furnish potentially incriminating information which the federal

government could make available to federal, state and local enforcement officers.

In late 1968, Congress amended the Act to provide that the transferor must now make application for the transfer based upon specific identifying information, photographs, and fingerprints to be supplied by the transferee. See 26 U.S.C. § 5841. Congress further amended the Act by enacting 26 U.S.C. § 5848 which provides:

"§ 5848. *Restrictive use of information.*

(a) General rule.—No information or evidence obtained from an application, registration, or records required to be submitted or retained by a natural person in order to comply with any provision of this chapter or regulations issued thereunder, shall, except as provided in subsection (b) of this section, be used, directly or indirectly, as evidence against that person in a criminal proceeding with respect to a violation of law occurring prior to or concurrently with the filing of the application or registration, or the compiling of the records containing the information or evidence.

(b) Furnishing false information.—Subsection (a) of this section shall not preclude the use of any such information or evidence in a prosecution or other action under any applicable provision of law with respect to the furnishing of false information."

■ As the Supreme Court held in *United States v. Freed, supra,* the Amended Act in its present form does not violate the self-incrimination clause of the Fifth Amendment. The transferor—not the transferee—does the registering. The information provided to the Internal Revenue Service through the registration process, as a matter of practice, is not available to state or local authorities and, as a matter of law (26 U.S.C. § 5848), cannot be used as evidence in a criminal proceeding with respect to a prior or a concurrent violation of the law.

Recently in *United States v. Bright,* 471 F.2d 723 (1973) the Fifth Circuit was presented with a case very similar to this appeal. The defendant, John Bright, was on parole and was arrested for the illegal possession of a shotgun. He argued that in order for him to register he would have to incriminate himself, which would result in a parole revocation. Nevertheless, the Court found that there was no violation of Fifth Amendment rights, stating quite succinctly:

"A reading of the statute itself demonstrates that appellant's position is untenable. If Bright was, in the statutory language, a 'transferee' of the shotgun, then he was not required to register the gun himself . . . [citing *Haynes*]. Now the only persons who must register a covered firearm [are the transferors] who must register the firearm in his transferee's name. 26 U.S.C. § 5841(b). Thus while a transferee may still be prosecuted for possessing a firearm not registered to him . . . he can no longer 'comply' with that section by registering the gun himself.

\*     \*     \*     \*     \*     \*

[In addition an amendment to the act] prohibits the direct or indirect use of any information obtained from firearm registration as evidence against the registrant .  .  .. This 'use immunity' provision would undoubtedly prohibit use in a parole revocation proceeding of any information obtained from registration of the shotgun", 471 F.2d at 726.

In light of the recent amendments which grant immunity to those who under the statute are required to register, and the decisions in *United States v. Freed, United States v. Bright, supra,* we believe that James' claim that his right against self-incrimination was violated is legally unsupportable.

III. THE FEDERAL INDICTMENT DID NOT PLACE THE DEFENDANT IN DOUBLE JEOPARDY IN VIOLATION OF THE FIFTH AMENDMENT.

■ Even though the defendant raises the double jeopardy argument, he admits in his brief that the law is well settled that where two sovereignties have prohibited the same act within their constitutional authority a subsequent federal or state prose-

cution will not automatically place a defendant in double jeopardy or violate the Fifth Amendment. *Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 684 (1959); *Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 729 (1959). However, defendant claims that the peculiar circumstances present here dictate that in the interest of "justice, fair play and fundamental fairness" the defendant should not be prosecuted by the federal authorities. As stated previously we reject any notion that the government acted in an unfair manner. The record indicates that no valid agreement was ever made. The position in which the defendant now finds himself was the result of his own conduct—not misleading or deceitful conduct of the government. Accordingly, the judgment is affirmed.

AFFIRMED.