**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 93-4272
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

WENDELL ARDOIN,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Western District of Louisiana
_____
(April 6, 1994)

Before VAN GRAAFEILAND,[*] SMITH, and WIENER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Wendell Ardoin appeals his conviction of possessing, manu-
facturing, failing to register, and failing to pay taxes on
illegal machineguns. Ardoin argues that the statute under which
he was charged, requiring registration and payment of taxes, was
implicitly repealed by a statute declaring machineguns manufac-
tured after 1986 ("post-1986 machineguns") illegal. He also
claims that the statute prohibiting "making" of firearms is

_____

[*] Circuit Judge of the Second Circuit, sitting by designation.

unconstitutionally vague.  Furthermore, he challenges the district court's refusal to grant a new trial based upon new evidence and his sentence under the Sentencing Guidelines (the "Guidelines").  We conclude that the statute under which Ardoin was convicted was not implicitly repealed and is not unconstitutionally vague, and we affirm his conviction and sentence.

## I.

### A.

Ardoin is an avid gun collector and dealer.  He is a member of the local sheriff's and police department reserves.  In 1989, he became a gun dealer and obtained a Class I gun license by filing the appropriate forms with the Bureau of Alcohol, Tobacco, and Firearms ("ATF").  He then filed a Form 11 with ATF to obtain his Class III license to buy and sell machineguns.

In 1989, Ardoin also became a Colt distributor for law enforcement agencies.  As a distributor, he was able to sell to law enforcement agencies any class of weapons, including machineguns, as long as he maintained his Class III license.[1] Ardoin also purchased Colt semi-automatic weapons from the Welsh, Louisiana, Police Department in exchange for supplying the department with free equipment and/or weapons.  Furthermore, he obtained four automatic weapons from the Baton Rouge Police Department on behalf of the Welsh Police Department's chief.

---

[1] The government contends that Ardoin allowed his Class III license to lapse in June 1989.  His partnership reapplied for a Class III license in August 1989; the application was approved on October 27, 1989.

2

The semi-automatic weapons purchased through the Welsh Police Department did not require the filing of forms with ATF or the payment of transfer tax, as they were not automatic weapons. The Baton Rouge weapons, however, were automatic, and Ardoin filed a Form 10 with ATF. Form 10 is used to register weapons to a particular law enforcement agency and to obtain a tax-exempt status on the transfer. After filing the forms, Ardoin obtained the machineguns through the Welsh Police Department.

Also in 1989, Ardoin's partner, Michael Hebert, converted some semi-automatic weapons to automatic guns for the use of local police and sheriff's departments. Before converting the weapons, Ardoin filed a Form 10 with ATF for each weapon.

B.

On November 6, 1991, Ardoin was indicted on fourteen counts of conspiracy to violate the National Firearms Act ("NFA"), 26 U.S.C. §§ 5861(d), (e), and (l) and 7201, making of machineguns without having filed a written application or paying the making tax (in violation of §§ 5861(f) and 5871), evading the payment of taxes (in violation of § 7201), engaging in the business as a dealer without having paid the special occupational tax (in violation of §§ 5861(a) and 5871), making false entries on applications for tax-exempt transfers and registrations (in violation of §§ 5861(l) and 5811), and possession of unregistered firearms (in violation of §§ 5861(d) and 5871. At trial, the government contended that the various weapons were in the

3

physical possession of Ardoin's partnership, Bayou State Armory, not the local police departments. Therefore, Ardoin should have filed a Form 1 instead of a Form 10 and should have paid a making tax. Ardoin responded that the Welsh Police Department had authorized him to receive the weapons and that he was a commissioned officer acting on the department's behalf. Furthermore, ATF had sent out a circular stating that it would no longer accept Form 1's and that the guns were tax-exempt, since they were made for a government agency. Ardoin was unable to obtain a copy of the ATF circular, and ATF agent Paul Rash testified that no such circular existed.

A jury found Ardoin guilty on all twelve counts.[2] He moved for a new trial after obtaining a copy of the ATF circular. The motion for new trial was denied. The sentencing court adopted the factual findings contained in the presentence investigation report ("PSR"), which recommended a range of forty-six to fifty-seven months' imprisonment. Ardoin was sentenced to forty-six months on each of the twelve counts, to run concurrently.

## II.

This case presents a novel constitutional issue in this circuit: whether § 102(9) of the Firearms Owners' Protection Act of 1986 ("FOPA"), 18 U.S.C. § 922(o), which amended the Gun Control Act of 1968 by making possession of machineguns illegal,

---

[2] The 14-count indictment was amended prior to trial by dismissing two of the counts.

implicitly repealed portions of the NFA.  We review such legal questions de novo.  United States v. Guajardo, 950 F.2d 203, 206 (5th Cir. 1991), cert. denied, 112 S. Ct. 1773 (1992).

Ardoin argues that 26 U.S.C. §§ 5821, 5861(d), (e), (f), (l), 5871, and 5845 are unconstitutional because they were originally based upon Congress's taxing power.[3]  He reasons that since individuals may not possess machineguns manufactured after May 19, 1986, and ATF refuses to accept applications to register or to pay the tax on such weapons, the constitutional authority for provisions of the NFA dealing with the registration and taxing of post-1986 machineguns is gone.  Consequently, criminal liability imposed under the NFA for failure to comply with these provisions has also been repealed.

Ardoin cites United States v. Rock Island Armory, 773 F. Supp. 117 (C.D. Ill. 1991), and United States v. Dalton, 960 F.2d 121 (10th Cir. 1992), as authority for this position. In Rock Island Armory, the court held portions of the NFA to have been implicitly repealed by the FOPA.

Two bases exist for declaring the portions of the NFA pertaining to post-1986 machineguns to have been implicitly repealed.  First, the fact that ATF no longer collects taxes or accepts registration forms for such weapons makes compliance with

---

[3] The one case in this circuit to consider the basis for the NFA is United States v. Parker, 960 F.2d 498 (5th Cir. 1992), in which we noted that § 5861(d) "`is part of the web of regulation aiding enforcement of the transfer tax provision in [26 U.S.C.] section 5811' and `the constitutional bedrock for the statute' is `the power to tax' rather than `the commerce power.'"  Id. (quoting United States v. Ross, 458 F.2d 1144, 1145 & n.3 (5th Cir.), cert. denied, 409 U.S. 868 (1972)).

§ 5861(d) impossible.  Second, and more importantly in the Rock Island Armory court's view, the refusal to tax these weapons undercuts the constitutional basis of registration, since the NFA was originally upheld under Congress's power to tax.  The Tenth Circuit adopts this view in Dalton.

The government cites United States v. Jones, 976 F.2d 176 (4th Cir. 1992), cert. denied, 113 S. Ct. 2351 (1993), to rebut these two arguments.  The court held in Jones that in the absence of an affirmative showing of an intention to repeal a statute, the only permissible justification for repeal by implication is when the earlier and later statutes are irreconcilable.  Id. at 183 (quoting Morton v. Mancari, 417 U.S. 535, 550 (1974)).

But 18 U.S.C. § 922(o), prohibiting post-1986 machineguns, can be reconciled with § 5861.  Citing Minor v. United States, 396 U.S. 87, 96-97 (1969), for the proposition that Congress can tax illegal conduct such as the sale of narcotics, the court concluded that the prohibition of post-1986 machineguns does not mean that Congress cannot tax them.  Although it is illegal to possess or manufacture these weapons, one illegally doing so would be required to register them with ATF and pay taxes on them.  And if ATF refuses to allow registration or the payment of taxes, one can comply with § 5861(d) by not violating § 922(o), i.e., by not possessing or manufacturing any post-1986 machineguns.  Jones, 976 F.2d at 183 (citing Minor).[4]  Thus, the

_____

[4] As we have recently stated, "it is true that a transferee may be prosecuted for possessing an unregistered firearm even though he himself cannot comply with the registration requirement."  United States v.

6

Jones court rejected the Tenth Circuit's view that compliance with § 5861 was impossible and therefore that the statute was implicitly repealed.

Jones dealt with the taxing authority argument in two ways. First, ATF has the authority to tax now-illegal machineguns. Although it chooses not to allow tax payments or registration, it still has the authority to do so. Thus, the basis for ATF's authority to regulate )) the taxing power )) still exists; it is merely not exercised. Second, the court noted that although the NFA was originally upheld under Congress's taxing power, no one could seriously contend that the regulation of machineguns could not also be upheld under Congress's power to regulate interstate commerce.[5]

We adopt the analysis of the Fourth Circuit. The NFA can be upheld on the preserved, but unused, power to tax or on the power to regulate interstate commerce. Since the provisions of the NFA can be reconciled with the FOPA, the doctrine of implicit repeal must be rejected.

---

Ridlehuber, 11 F.3d 516, 526 (5th Cir. 1993) (citing United States v. Bright, 471 F.2d 723, 726 (5th Cir.), cert. denied, 412 U.S. 921 (1973); United States v. Sedigh, 658 F.2d 1010, 1012 (5th Cir. Unit A Oct. 1981), cert. denied, 455 U.S. 921 (1982)). But this result does not offend due process, because "[t]he requirement that a transferee must refuse to accept possession of an unregistered firearm is rationally designed to aid in the collection of taxes imposed by other provisions of the [NFA]." Id. at 527 (citation omitted). The same is true for someone possessing an illegal post-1986 machinegun: Ardoin should have refused the transfer. The fact that ATF does not accept the registration of such weapons does not offend due process.

[5] Of course, as we have recently noted, Congress's power to regulate firearms under the Commerce Clause is not unlimited. See United States v. Lopez, 2 F.3d 1342 (5th Cir. 1993), petition for cert. filed, 62 U.S.L.W. 3645 (U.S. Feb. 2, 1994) (No. 93-1260).

7

III.

Ardoin next challenges the constitutionality of his conviction for "making" a firearm, as the Supreme Court has recently held that the term "making" is ambiguous. We review this legal issue de novo. Guajardo, 950 F.2d at 206.

In United States v. Thompson/Center Arms Co., 112 S. Ct. 2102 (1992), the Court recently considered the meaning of the term "make" as used in the NFA. In Thompson/Center, the defendant manufactured a single shot pistol. Included with the gun, however, was a conversion kit that allowed the purchaser to convert the gun into a short-barreled rifle, a gun regulated by ATF. The defendant paid the "maker" tax but sued ATF for a refund. The Court held that the term "maker" in 26 U.S.C. §§ 5821 and 5845 was ambiguous as applied to unassembled parts, as there was only the possibility of their being assembled into a regulated firearm.

The holding of Thompson/Center, however, is applicable only to unassembled parts. The statute is not ambiguous with respect to fully assembled machineguns. Ardoin argues that in a criminal proceeding the "rule of lenity" should apply. But the Thompson/Center Court would only hold the term "making" unconstitutionally vague as applied to unassembled machineguns. Ardoin manufactured fully assembled machineguns and should have known that such production was "making" under the statute. He cannot take advantage of an ambiguity with respect to some other fact situation.

8

Ardoin's main complaint seems to be that he was manufacturing these weapons for law enforcement agencies, and therefore he should have been exempt from the taxing laws. But that issue was tried before a jury. And although Ardoin makes reference to this argument, he never specifically appeals the jury's factual finding or the verdict. We find, therefore, that the statute was not unconstitutionally ambiguous with respect to the making of fully assembled post-1986 machineguns.

IV.

Ardoin argues that the ATF circular, which informed gun dealers that ATF would no longer accept Form 1's, represents new evidence requiring a new trial. To obtain a new trial based upon new evidence, a defendant must show that (1) the evidence was newly discovered and unknown to the defendant at the time of the trial; (2) failure to detect the evidence was not a result of lack of due diligence by the defendant; (3) the evidence is material, not merely cumulative or impeaching; and (4) the evidence will probably produce an acquittal. United States v. Peña, 949 F.2d 751 (5th Cir. 1991). If any one factor is not satisfied, the motion for new trial should be denied. United States v. Lopez-Escobar, 920 F.2d 1241 (5th Cir. 1991). We review the denial of such a motion for abuse of discretion. United States v. Adi, 759 F.2d 404 (5th Cir. 1985).

The ATF circular fails to meet several components of the test. First, Ardoin knew about its existence but could not

9

produce it at trial.  He filed no subpoena for the document, indicating a certain lack of diligence.  The district court therefore determined that the evidence was not "newly discovered" within the meaning of FED. R. CRIM. P. 33.  Second, if we hold that the impossibility of complying with a statute does not render it unconstitutional, the circular was not particularly useful to Ardoin and would not "probably" produce an acquittal. Ardoin still could be convicted of failing to comply with the registration and taxation requirements, as he could have complied by not manufacturing the illegal weapons.  Procedurally, a motion for new trial is disfavored; the discovery of the circular does not warrant a new trial.

V.

Ardoin challenges his sentence imposed under the Guidelines because he was not granted a downward departure for his community service, employment record, lack of criminal record, and potential for victimization.  We review the findings of fact under the "clearly erroneous" standard, but legal application of the Guidelines is reviewed de novo.  United States v. Barbontin, 907 F.2d 1494 (5th Cir. 1990).

Any departure from the Guidelines must be supported by adequate reasons that justify the departure "in terms of the policies underlying the sentencing guidelines" and must be reasonable.  United States v. Buenrostro, 868 F.2d 135 (5th Cir. 1989), cert. denied, 495 U.S. 923 (1990).  The Guidelines

10

specifically reject first-time offender status as a ground for downward departure.  First-time offenders are assigned criminal history category I, which adequately reflects the level of recidivism.  U.S.S.G. § 4A1.3.  Sections 5H1.5 and 5H1.6 also specifically reject community service and employment record as grounds for departure.  Moreover, there is no authority in this circuit for departing based upon the potential for victimization. Ardoin argues that these factors are not <u>ordinarily</u> considered, but in his case they ought to be.

We conclude that the district court considered all relevant factors and sentenced Ardoin to the lowest sentence within the range.  The failure to depart downward was not in error.

AFFIRMED.

WIENER, Circuit Judge, dissenting in part, concurring in part, and dissenting in the result:

Over a half-century ago, in 1934, Congress held hearings to determine whether it had the authority to regulate the manufacture, transfer, and possession of machine guns.[6] As these hearings pre-dated the vast New Deal enlargement of Congress' power under the Commerce Clause, then Attorney General Homer S. Cummings correctly explained to the gathered congressmen that Congress could not simply ban machine guns because it had "no inherent police power to [make law concerning] local crime."[7] Only through Congress' power to tax, explained Cummings, could machine guns be regulated.[8] Thus was born the National Firearms Act of 1934 (NFA), which imposed a tax on the manufacture and transfer of machine guns pursuant to Congress' power to raise revenue. Indeed, when the constitutionality of the NFA was attacked, its validity was upheld by the Supreme Court "precisely because the National Firearms Act was a revenue measure <u>only</u> and did not purport to exercise any general criminal power not delegated to Congress by the Constitution."[9]

Despite its subsequent acquisition of virtually unbounded

---

[6]<u>National Firearms Act of 1934: Hearings Before the House Committee on Ways and Means</u>, 73rd Cong., 2d Sess. 6 (1934).

[7]<u>Id.</u> at 8.

[8]<u>Id.</u>

[9]<u>United States v. Rock Island Armory, Inc.</u>, 773 F. Supp. 117, 121 (C.D. Ill. 1991) (emphasis added) (citing <u>Sonzinsky v. United States</u>, 300 U.S. 506, 57 S. Ct. 554, 81 L. Ed. 772 (1937), <u>aff'g</u> 86 F.2d 486 (7th Cir. 1936)).

power under the post-New Deal Commerce Clause, Congress waited over five decades following its 1934 adoption of the NFA before banning citizens' possession of machine guns altogether. Section 922(o) of the Firearm Owners' Protection Act[10] (FOPA) prohibits a private citizen from possessing or transferring a machine gun that was not made and registered before May 19, 1986, unless such transfer or possession is authorized by federal or state governments or their departments or agencies.[11]

Since the enactment of FOPA, the Bureau of Alcohol, Tobacco and Firearms (BATF) "has refused to approve any application to make, transfer, and pay the $200 tax on any machine gun made after May 19, 1986."[12] Yet the BATF continues to arrest and convict citizens like Ardoin under the NFA for not registering and paying taxes on their machine guns))even though it is legally impossible for them to do so.[13] Because I do not believe that a statute which was enacted to tax a legal activity can legitimately be mutated into a statute that criminalizes that very same activity, and because I believe that convicting citizens for violating laws with which they cannot possibly comply is fundamentally unfair, I

---

[10]Firearms Owners' Protection Act of 1986, 18 U.S.C. § 922(o).

[11]Rock Island Armory, 773 F. Supp. at 119 (interpreting the FOPA).

[12]Id.

[13]Neither the BATF nor the majority indicates why the BATF continues to prosecute citizens under the NFA for mere possession of machine guns when Congress has enacted section 922(o) of FOPA for that very purpose and when the relevant NFA provisions were enacted not to ban machine guns, but expressly to collect taxes from firearm-owning citizens.

respectfully dissent.

I hasten to add, however, that I do concur in some important pronouncements of the majority opinion. Specifically, I agree that the words "make" and "maker," found in the NFA, are <u>not</u> unconstitutionally vague as applied to this case: converting a semi-automatic firearm to a fully-automatic weapon clearly constitutes "making" a machine gun. Neither do I quarrel with the trial court's ruling that the Sentencing Guidelines))rightly or wrongly))do not ordinarily permit a reduction in sentence for first-time offender status, community service, or a history of gainful, socially-productive employment.

I cannot concur, though, in the majority's affirmance of Ardoin's conviction under provisions of the NFA when those provisions (1) have been totally eclipsed by section 922(o) of the FOPA, and (2) cannot be complied with due to the refusal of the government to permit compliance. I regret that the majority today elects to join what I believe to be the legally inferior side of a pre-existing circuit split on this issue. I fear that in so choosing for this circuit, the majority rejects two persuasive precedents (including one that sets forth the relevant history and purpose of the NFA in exhaustive detail)[14] in favor of embracing a third precedent which essentially holds that because Congress <u>could</u> re-enact the tax-based NFA as a Commerce Clause-based ban against mere possession of machine guns, we should behave as though

---

[14]<u>United States v. Dalton</u>, 960 F.2d 121 (10th Cir. 1992); <u>Rock Island Armory</u>, 773 F. Supp. at 121 (discussing the legislative and judicial history of the NFA).

3

Congress <u>did</u> so.[15]

In actuality, Ardoin advances three separate, alternative attacks on the viability of sections 5821, 5845, 5861 (d), (e), (f), and (l), and 5871 of the NFA:  1) these sections were <u>impliedly repealed</u> by the enactment of section 922(o) of the FOPA, 2) the application of these sections to Ardoin's case violates <u>due process</u> (i.e., is fundamentally unfair) because the law (and BATF policy) makes compliance impossible, and 3) these sections))enacted pursuant to Congress' power to tax))have been rendered nugatory by the government's refusal to administer or enforce them to raise any revenue whatsoever.

1.   <u>Implied Repeal of Sections of the National Firearms Act</u>

The majority correctly notes that an earlier statute may be implicitly repealed through the enactment of a later statute when))and only when))the two statutes are <u>irreconcilable</u>.[16]  From my vantage point, however, the efforts of the Fourth Circuit in <u>United States v. Jones</u>[17] and of the majority today clearly fail to reconcile sections 5821, and 5861 (d), (e), and (f) of the NFA with section 922(o) of the FOPA.

Until the enactment of section 922(o) of the FOPA, a citizen could legally make, transfer, or possess a machine gun, as long as he complied with the relevant registration and tax provisions of

---

[15]<u>United States v. Jones</u>, 976 F.2d 176, 184 (4th Cir. 1992).

[16]<u>Morton v. Mancari</u>, 417 U.S. 535, 549-51, 94 S. Ct. 2474, 41 L. Ed. 2d 290 (1974).

[17]976 F.2d 176.

4

the NFA.  Simply put, since 1934 the <u>NFA</u> has said to such a citizen, "You may manufacture, transfer, or possess a machine gun if))but only if))you register and pay taxes on it."  Then along came section 922(o) of the <u>FOPA</u>))some fifty-two years later))and declared to that same citizen, "You may not manufacture, possess, or transfer machine guns))period."  What sense does the NFA make now?  The BATF operates as though Congress has passed two separate laws each criminalizing the mere possession of machine guns, leaving the BATF with the discretion to prosecute citizens' <u>possession</u> under either statute (or both).  But that is not))and cannot be))the case.

There is no evidence that Congress ever adverted to the effect that the enactment of section 922(o) would have on related provisions of the NFA.  But undeniably the enactment of section 922(o) did affect the NFA))enormously.  Because the NFA <u>forbids</u> the BATF to register and accept taxes for illegal firearms,[18] the enactment of section 922(o)))which basically made the mere <u>possession</u> of machine guns by private citizens illegal))rendered the extensive registration and tax provisions of the NFA essentially meaningless.  Indeed, the NFA's regulation of machine gun-ownership by private citizens was made instantly obsolete by the advent of the FOPA.  There is no longer any place for those provisions in the present legislative scheme for regulation of most

[18]<u>See</u> The National Firearms Act of 1934, 26 U.S.C. §§ 5812, 5822 (applications to register the transfer, making, or possession of firearms <u>shall be denied</u> if the transfer, making, or possession would be <u>illegal</u>) (emphasis added); 27 C.F.R. § 179.105.

5

prospective machine gun-owners.  Their vestigial existence on the statute books analogizes perfectly to the human appendix:  no useful function whatsoever, but unlimited potential for insidious mischief.

Moreover, section 922(o) reflects Congress' judgment concerning the correct statutory formulation and the appropriate level of punishment for mere possession of a machine gun.  Thus, if we uphold the continued application of the NFA to citizens who transfer, make, and possess machine guns))even though the NFA no longer serves any revenue-raising purpose))we are altering that congressional judgment.  Why then does the BATF continue to prosecute citizens under NFA solely for the possession of machine guns, rather than resorting to section 922(o), which Congress expressly designed for that purpose?  Perhaps because the statutory maximum fines for violating the NFA are greater than those provided under the FOPA.[19]  More likely, BATF agents and prosecutors find it easier to get convictions under the NFA, both because it appears to have an easier _mens rea_ requirement,[20] and because the laundry list

_____

[19]A person who is convicted of violating any provision of the NFA is "fined not more than $10,000, or be imprisoned not more than ten years, or both."  26 U.S.C. § 5871.  In contrast, a person who is convicted of violating section 922(o) is fined not more than $5,000 or imprisoned not more than 10 years, or both.  18 U.S.C. § 924(a)1(D) & (a)2.

[20]A citizen may only be convicted for _knowingly_ violating section 922(o).  18 U.S.C. § 924(a)(2).  In contrast, a citizen may be convicted under the NFA for "violat[ing] or fail[ing] to comply with any provision."  26 U.S.C. § 5871.

of possible statutory violations is so very long.[21]  But Congress clearly did not intend for its passage of the FOPA to transform the preexisting NFA into a more severe ban against the simple possession of machine guns, for such a mutation of the NFA makes section 922(o) of the FOPA superfluous:  what the BATF is supposed to do under the FOPA can be done more easily (and with the majority's blessing) under the "new," transmuted NFA, which has been administratively (and now jurisprudentially) shorn of the registration and taxation provisions that once were its whole <u>raison d'être</u>.

The obsolescence of the NFA provisions at issue here is also exposed by the fact that))although expressly enacted to raise revenues from private citizens))those provisions no longer raise any revenue from the possession, transfer, and making of machine guns by private citizens.  The suggestion that a tax measure can somehow have continued vitality when it no longer taxes certainly tests one's imagination.  Although implied repeals are disfavored, I firmly believe that the sections of the NFA at issue here are so utterly irreconcilable with section 922(o) of the FOPA as a means of regulating private ownership of machine guns that they were impliedly repealed by FOPA's passage:  with respect to the regulation of machine guns, the latter has superseded and supplanted the former.

---

[21]Section 5861 of the NFA alone lists twelve separate acts that constitute violations of the NFA.  26 U.S.C. § 5861.

7

2.  <u>Convicting Ardoin of Violating Applicable Sections of the
    NFA Violates Due Process</u>

Since the enactment of section 922(o), the BATF has))with few exceptions))refused to register or to accept the $200 tax on any machine gun made after May 19, 1986.[22]  In discussing Ardoin's demand for a new trial based on his ultimate discovery of a BATF circular which announced that the BATF would no longer register or accept taxes on machine guns,[23] the majority implies that Ardoin had the burden of proving that the BATF no longer registers or accepts taxes for machine guns.  I respectfully disagree.

The BATF's refusal to register or accept taxes for machine guns is not evinced solely in the BATF circular that Ardoin was unable to locate until after his trial; such refusal <u>is expressly mandated by law</u>.  Sections 5812 and 5822 of the NFA state categorically that applications to register the transfer or making of firearms <u>shall be denied</u> if the transfer, making, or possession of the firearm would be <u>illegal</u>.[24]  As the transfer, possession, and making of machine guns by private citizens became illegal with the adoption of section 922(o) of the FOPA, sections 5812 and 5822 of the NFA clearly <u>require</u> the BATF to reject applications to register

---

[22]<u>United States v. Rock Island Armory, Inc.</u>, 773 F. Supp. 117, 119 (C.D. Ill. 1991); <u>accord</u> <u>United States v. Dalton</u>, 960 F.2d 121, 123 (10th Cir. 1992).

[23]At trial the BATF consistently denied the existence of this circular.  Subsequent events have revealed that the BATF's denial was incorrect if not duplicitous.

[24]The National Firearms Act of 1934, 26 U.S.C. §§ 5812, 5822 (emphasis added).

the transfer or manufacture of machine guns.[25]  Additionally, 27 C.F.R. § 179.105 expressly restricts registration of machine guns to those authorized for use by federal, state, or local government entities.[26]  Finally, other courts have expressly found that the BATF refuses to register or accept taxes for machine guns.  I can see no reason why we should not take judicial notice of this recognition.[27]

I thus find it indisputable that since May 19, 1986, the BATF has not, does not, and may not register or accept taxes for machine guns.  Ardoin, presumed innocent, did not have to prove this assertion as part of his defense, for we know it to be the law.  It seems inescapable to me that a private citizen literally cannot comply with the terms of sections 5821, 5845, 5861 (d), (e), (f), and (l), and 5871 of the NFA no matter how sincerely he wants to comply and how hard he tries to comply, because the enactment of section 922(o) made compliance a legal impossibility.  How then can any court "reconcile" these two statutes?

Ardoin was convicted of violating the NFA.  Specifically, he was convicted))<u>inter alia</u>))of making a machine gun without having filed an application to make and register the gun, of making a machine gun without having paid the making tax, and of transferring a machine gun without having filed an application to transfer the

---

[25]<u>Id.</u>

[26]<u>Rock Island Armory</u>, 773 F. Supp. at 119 (citing 27 C.F.R. § 179.105).

[27]<u>See, e.g.</u>, <u>United States v. Dalton</u>, 960 F.2d 121 (10th Cir. 1992); <u>Rock Island Armory</u>, 773 F. Supp. at 119.

weapon.  But he could not have paid the machine gun tax, because the BATF would not accept such payment.  And filing applications, even on the correct form (form 1 instead of form 10 which Ardoin did try to use), would have been futile, because the BATF is required to reject those applications.  Ardoin is thus being convicted of violating laws with which he could not have complied, even had he performed the proverbial hollow act and))like Luther))tacked his makeshift registration form and $200.00 to the BATF's front door.

The majority offers two responses to Ardoin's dilemma: (1) Congress has the authority to choose to tax an activity even though such activity is illegal; and (2) Ardoin could have complied with the application and tax provisions of the NFA simply "by not possessing or manufacturing any post-1986 machineguns."[28]  Try as I may, I cannot find either argument convincing.

The majority's assertion that Congress has the power to tax illegal activities is correct, but in my opinion that assertion is also irrelevant.  The question here is not what Congress could have done, but what it did.  I agree that, as oxymoronic as it may sound, Congress could devise a law))possibly by amending the NFA))that would both make illegal and at the same time tax the manufacture, transfer, and possession of machine guns:  but Congress simply did not do that.  Instead, Congress adopted the FOPA, which clearly has the effect of forbidding the government from registering and collecting taxes on illegal firearms))the

---

[28]See ante at 6.

10

exact opposite of affirmatively taxing an illegal activity.[29]  To me, any discussion of what Congress could have done or might yet do merely begs the question.

The majority's "just say no" response, like that of the Fourth Circuit before it))in effect telling Ardoin that he could have avoided violation of the NFA simply "by not possessing or manufacturing any . . . machineguns"))is even more troublesome to me.  I keep asking myself "why is it that each time I revisit the majority's response I am reminded of Marie Antoinette's advice to 'let them eat cake'?"  Such casual, dismissive responses are just not satisfactory when it comes to engaging in an activity, such as keeping and bearing arms, that arguably implicates the Bill of Rights.[30]

I do not dispute Congress' authority to make a law prohibiting citizens from owning or possessing machine guns.[31]  And that is precisely what Congress did when it enacted section 922(o) of the FOPA.  I do, however, question the fairness of continuing to prosecute citizens like Ardoin for failing to register and pay

---

[29]Again, see 26 U.S.C. §§ 5812, 5822; 27 C.F.R. § 179.105.

[30]Statutes criminalizing the possession, transfer, and making of machine guns are merely malum prohibitum laws.  In contrast to rape, murder, and robbery, such gun-related activities are not inherently bad; they are only technically or artificially illegal.  Courts, however, must defer to Congress when it legislates pursuant to its enumerated powers.  Thus, had Ardoin been properly indicted, prosecuted, and convicted under section 922(o) of the FOPA, I would not now be dissenting.  But I simply do not think that the NFA))which everyone concedes is a tax law))can legitimately double as a per se prohibition against the possession of machine guns.

[31]Indeed, I would personally support well-conceived efforts to do just that.

11

taxes on their machine guns now that the government does not allow them to do so.  Analogously, I acknowledge that since adoption of the Sixteenth Amendment Congress has had the authority to establish))as it has))a federal income tax.  But I believe that it would violate due process for the government to continue to arrest citizens for failing to file returns and pay their federal income taxes if Congress were to pass a law prohibiting the government from accepting tax returns and tax payments.  In other words, it is not the government's ban on machine gun possession that here violates due process; rather, it is the government's prosecution of citizens like Ardoin for failure to register and pay taxes on their machine guns))when the government refuses to accept registration applications and tax-payments on such firearms))that strikes me as violating due process.

I am compelled to reemphasize at this juncture that the gravamen of the NFA violations at issue here is not mere possession of an unregistered machine gun; it is the failure to register and pay taxes on that machine gun.[32]  That is why section 922(o) was enacted.  If the NFA could double as a naked prohibition against simple possession of an unregistered machine gun, section 922(o) would have been wholly unnecessary.  Yet today we allow the BATF to ignore the NFA's registration and taxation provisions, thereby transmuting the NFA into a second, and perhaps a more easily enforced, criminal ban on the mere possession of machine guns.

I also regret that I have been singularly unsuccessful in

---

[32]United States v. Dalton, 960 F.2d 121, 123 (10th Cir. 1992).

12

convincing my fellow panelists that the Supreme Court has rejected the very reasoning upon which the majority opinion relies.[33] In Haynes v. United States, the government had arrested the defendant under an earlier version of the NFA for possessing an unregistered handgun.[34] The government adopted the position approbated by the majority today; namely, that the defendant's crime was the mere possession of an unregistered firearm. The Supreme Court rejected the government's postulate, recognizing that the criminally proscribed act consisted of two elements: possession of a firearm, coupled with the failure to register that firearm.[35] The NFA's registration requirement, stated the Court, "suggest[s] strongly that the perimeter of the offense . . . is to be marked by the terms of the registration requirement imposed."[36] In other words, failing to register a firearm is an essential constitutive element of the substantive crime proscribed by the NFA))it is part of the actus reus defined by the NFA.

According to the Supreme Court, then, citizens do not violate the NFA solely by possessing unregistered machine guns: they must actually fail to register those weapons. And it is apparent))at least to me))that the failure to register and pay the tax on a

---

[33]Dalton, 960 F.2d at 123 (referring to Haynes v. United States, 390 U.S. 85, 88 S. Ct. 722, 19 L. Ed. 2d 923 (1968)).

[34]390 U.S. at 89.

[35]Id. at 95.

[36]Id. at 93; see also Dalton, 960 F.2d at 123 (for a more detailed discussion of the Haynes opinion).

13

firearm cannot be a prosecutable criminal act when the government refuses to accept the appropriate registration documents and tax payments even though the applicable registration and tax payment provisions remain "on the books." I find neither authority nor mandate for us to rewrite the NFA to criminalize mere possession of machine guns. Yet without such an act of judicial legislation, I can see no way for us to sanction enforcement of the NFA as it applies to ownership of machine guns manufactured after May 19, 1986. Convicting Ardoin of violating statutory provisions with which the law prevents him from complying strikes me as offending fundamental fairness and thus due process. "One simply cannot be criminally liable for failing to do an act which [one] is . . . incapable of performing."[37] For this reason, too, I believe that Ardoin's conviction should be set aside.

3.    <u>Stripped of its Revenue-Raising Function, The NFA is Nugatory</u>

As already noted, the NFA was passed in 1934 pursuant to Congress' power to collect taxes.[38] To remain legitimate, however, a measure enacted under the tax power must raise some revenue.[39]

---

[37]<u>Dalton</u>, 960 F.2d at 124 (quoting 1 W. LaFave & A. Scott, Jr., <u>Substantive Criminal Law</u>, § 3.3(c) at 291 (1986)).

[38]<u>Rock Island Armory</u>, 773 F. Supp at 119-21 (citing <u>National Firearms Act:  Hearings Before the House Comm. on Ways and Means</u>, 73rd Cong., 2d Sess. 6-19 (1934).

[39]<u>See, e.g.</u>, <u>United States v. Kahriger</u>, 345 U.S. 22 (1953); <u>Sonzinsky v. United States</u>, 300 U.S. 506, 514 (1937) (upholding the constitutionality of the NFA because it was "productive of some revenue"); <u>Bailey v. Drexel</u>, 249 U.S. 86 (1919) (holding the Child Labor Tax Act unconstitutional because it was primarily a <u>penalty</u>, not a <u>tax</u>); <u>United States v. Dalton</u>, 960 F.2d 121, 124-25 (10th Cir. 1992); <u>United States v. Rock Island Armory, Inc.</u>, 773 F. Supp. 117, 119 (C.D. Ill. 1991).

14

As the BATF no longer registers or accepts tax payments for privately-owned machine guns manufactured after May 19, 1986, the NFA provisions at issue cannot possibly raise any revenues from private citizens (unless criminal fines are considered revenues). Such provisions have therefore ceased to be valid manifestations of Congress' power to tax.[40]

Neither can the constitutionality of the NFA as applied to citizens who possess, make, or transfer machine guns be rescued by incanting))as did the Fourth Circuit in Jones[41]))that the Act "could" be upheld under Congress' power to regulate interstate commerce. I am convinced that the Act could only be upheld under the Commerce Clause if the Act were expressly adopted (or now re-adopted) by Congress under that clause. The undeniable fact remains, though, that Congress did not enact the NFA under the Commerce Clause and has not seen fit to re-enact it under that clause in all the decades that have ensued since the NFA's original enactment under Congress' power to tax. Indeed, in 1934, Congress' enactment of the NFA under its commerce power would almost certainly have been declared unconstitutional. Arguably, because the power and scope of any act of Congress depends on the enumerated power under which it is passed, a hypothetical NFA enacted under Congress' commerce power would be an entirely different act: an act that Congress never voted on))an act that

---

[40]Dalton, 960 F.2d at 124-25; Rock Island Armory, Inc., 773 F. Supp. at 119.

[41]976 F.2d 176, 184 (4th Cir. 1992).

<u>might never have passed</u>.

In this same vein, the majority's willingness to uphold the NFA under the Commerce Clause gives me separation of powers concerns. Under classical constitutional theory, the legislature must state))as part of its legislation))the particular power that authorizes it to enact the law in question. Judges should not be in the business of <u>re-writing</u> legislation by upholding laws on the basis of enumerated powers that are different from the ones invoked by Congress.

I am of course aware that today the enumerated-power test of a federal statute's validity is whether "the Congress might reasonably find that the act relates to one of the federal powers."[42] But))in my opinion))that maxim only applies to acts that are <u>silent</u> as to their sources of authority. In this case, there is no such silence; we know that Congress expressly passed the NFA pursuant to its power to tax and has allowed it to remain thus grounded for nearly sixty years. I have seen no evidence that Congress now intends to augment the power and scope of that act by imbuing it with the authority of the modern Commerce Clause. Moreover, it seems clear to me that if we approve this transformation, we become a party, at least by complicity, to what amounts to executive legislation: it is the Department of the Treasury's BATF))an arm of the Executive branch))that advances this

---

[42]John E. Nowak & Ronald D. Rotunda, <u>Constitutional Law</u> § 3.3 (West Publishing 1991).

16

interpretation; Congress remains mute.[43]  With the NFA stripped of its revenue-raising function, I would void Ardoin's conviction on this ground as well.

For all of the foregoing reasons, I respectfully but earnestly DISSENT.

---

[43]When the registration requirement is severed from the NFA a new substantive crime is created))a law that originally required registration of firearms is mutated into a law that proscribes possession of firearms.  See Haynes v. United States, 390 U.S. 85, 88 S. Ct. 722, 19 L. Ed. 2d 923 (1968) (holding that failure to register a machine gun is part of the substantive crime defined by the NFA).  The BATF is therefore currently enforcing a different NFA than the one that was actually passed by Congress.