**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Frank Cardenas GUAJARDO,**
**Defendant–Appellant.**

No. 91–5508.

United States Court of Appeals,
Fifth Circuit.

Dec. 19, 1991.

John R. Carter, Asst. Federal Public Defender, Lucien B. Campbell, Federal Public Defender, San Antonio, Tex., for defendant-appellant.

LeRoy Morgan Jahn, San Antonio, Tex. Glenn W. MacTaggart, Asst. U.S. Attys., Ronald F. Ederer, U.S. Atty., for plaintiff-appellee.

Before DUHÉ, WILLIAMS and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Defendant Frank Cardenas Guajardo ("Guajardo") pled guilty to a charge of possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Since the offense occurred on August 6, 1990, the district court applied the federal sentencing guidelines in effect on that date. *See* United States Sentencing Commission, *Guidelines Manual* (1989 ed.) ("U.S.S.G."). Guajardo appeals, alleging that the district court violated his equal protection and due process rights by application of career offender provisions, and that the district court improperly declined to grant a downward departure in his sentence. We reject Guajardo's contentions and affirm the district court's sentence.

I.

BACKGROUND

On August 6, 1990, the San Antonio Police Department obtained a state search warrant to seize narcotics at Guajardo's residence. During the execution of that search warrant, the police officers found

heroin and drug paraphernalia.[1] Guajardo was subsequently arrested for possession of heroin.

Later that month, a federal grand jury sitting in the San Antonio Division of the Western District of Texas returned a two-count indictment charging Guajardo with: (1) conspiracy to possess heroin with intent to distribute heroin in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1) (Count One); and (2) possession of heroin with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) (Count Two). Guajardo pled guilty to Count Two in exchange for dismissal of Count One.

A probation officer prepared a Presentence Report. The Presentence Report recommended a finding that Guajardo was a career offender.[2] In addition to other adjustments, this finding raised his offense level from 22 to 30.[3] The probation officer recommended the finding that defendant was a career offender because of two prior offenses: Guajardo was convicted of assault with intent to murder on May 28, 1965, and he pled guilty to burglary of habitation on May 20, 1982. The 1965 conviction resulted in a life sentence, but Guajardo was released on parole on June 29, 1976.

Because Guajardo was classified as a career offender, Guajardo's range of imprisonment under the sentencing guidelines was 168 to 210 months. The district court sentenced Guajardo to 168 months imprisonment.[4] Had Guajardo not been classified as a career offender, he asserts that his sentencing range under the sentencing guidelines would have been 77 to 96 months.[5] Guajardo also sought a downward departure, based on his age and physical condition, pursuant to Sections 5H1.1 and 5H1.4, which the district court denied.[6] The crux of Guajardo's appeal is that he should not have been classified as a career offender and that a downward departure was appropriate in his case.

## II.

## ANALYSIS

A. *Guajardo's Classification as a Career Offender*

Guajardo argues that the district court's use of his 1965 conviction to classify him as

---

1. Approximately 64 grams of heroin, various balloons containing a powdery substance believed to be heroin and $1,507 in United States currency were found. Drug paraphernalia, including a blender, measuring spoons and packaging materials, were also seized. The substances suspected of being heroin that were seized did test positive for heroin.

2. The career offender provision states:
 A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. If the offense level for a career criminal from the table below is greater than the offense level otherwise applicable, the offense level from the table shall apply. A career offender's criminal history category in every case shall be Category VI.
 U.S.S.G. § 4B1.1 (1989).

3. More specifically, because Guajardo was considered an organizer of the criminal activity and thus had an aggravating role in the crime, his base offense level was increased by 2 levels.

See U.S.S.G. § 3B1.1(C) (1989). For his acceptance of responsibility, his offense level was reduced 2 levels for a total offense level of 22. See U.S.S.G. § 3E1.1(a) (1989). Because he was a career offender within the meaning of § 4B1.1, however, the offense level was determined under § 4B1.1(C) and was 32; by taking into account the 2 level reduction for acceptance of responsibility, Guajardo had a total offense level of 30.
In addition, the total of Guajardo's criminal history points was 12. According to U.S.S.G. Sentencing Table, *set forth* at Ch. 5, Pt. A, 10 to 12 criminal history points establish a criminal history category of V. However, because Guajardo was a career offender as defined in U.S.S.G. § 4B1.1, his criminal history category was VI. See U.S.S.G. § 4B1.1 (1989).

4. Guajardo was also ordered to pay a special assessment of $50.00, and upon his release from imprisonment, he was to serve a supervised release term of three years.

5. See U.S.S.G. Ch. 5, Pt. A, sentencing table (1989).

6. Guajardo alleges that his ill health and advancing age justify the imposition of a sentence other than incarceration. See U.S.S.G. §§ 5H1.1 and 5H1.4 (1989).

a career offender violates his rights to due process and equal protection of laws guaranteed by the Fifth Amendment. This court's standard of review is de novo. *See United States v. Lara–Velasquez*, 919 F.2d 946, 953–54 (5th Cir.1990) (citation omitted) (de novo standard applies to a defendant's challenge to the district court's interpretation of the requirements of the sentencing guidelines); *United States v. Litteral*, 910 F.2d 547, 551 (9th Cir.1990) (citation omitted) (court reviews de novo the constitutionality of a statute).

Guajardo contests the use of Section 4A1.2(e)(1), which was used to classify him as a career offender. Section 4A1.2(e)(1), dealing with the computation of criminal history, provides in pertinent part:

> Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

U.S.S.G. § 4A1.2(e)(1) (1989). Guajardo committed this offense on August 6, 1990. Guajardo's earlier conviction was in 1965 for an April 24, 1964 charge of assault with intent to murder. He was released on parole June 29, 1976. Because the sentence for the 1965 conviction "resulted in the defendant being incarcerated during ... part of [the] fifteen-year period" prior to the August 6, 1990 offense, the district court properly used the 1965 conviction to classify Guajardo as a career offender. *Id.*

### i. Due Process

Guajardo contends that the district court's use of the 1965 conviction to classify him as a career offender violates his right to due process guaranteed by the Fifth Amendment. His discussion of this issue, however, centers on his equal protection argument. Guajardo does not squarely set forth a due process argument.

 Guajardo appears to allege that Section 4A1.2(e)(1) violates due process because it prevents the consideration of individual mitigating factors in sentencing. We disagree. The sentencing guidelines do not violate due process because they prevent individualized sentencing by establishing mandatory sentences for offenses. *See, e.g., United States v. White*, 869 F.2d 822, 825 (5th Cir.), *cert. denied*, 490 U.S. 1112, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989), *cert. denied*, 493 U.S. 1001, 110 S.Ct. 560, 107 L.Ed.2d 555 (1989) (citation omitted) (noting that the Constitution does not require individualized sentences); *United States v. Brady*, 895 F.2d 538, 539–44 (9th Cir.1990) (holding that sentencing guidelines do not violate substantive or procedural due process by limiting the sentencing discretion of the district court); *United States v. Green*, 902 F.2d 1311, 1313 (8th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 353, 112 L.Ed.2d 316 (1990) (citation omitted) (noting that the Constitution does not guarantee individualized sentencing, except in capital cases; due process not denied by use of career offender provision); *United States v. John*, 936 F.2d 764, 766–67 n. 2 (3d Cir.1991) (citation omitted) (noting that defendant does not have a substantive due process right to individualized treatment at sentencing). Because the Constitution does not require individualized sentences, the district court was correct to apply Section 4A1.2(e)(1) in determining Guajardo's sentence.

[2] Guajardo also argues that the use of the lengths of prior sentences to help determine his criminal history category violates due process. This argument has also been rejected. In *United States v. Litteral*, 910 F.2d 547, 552–53 (9th Cir.1990), the court stated that because the defendant did not show that the use of the lengths of prior sentences was necessarily unreliable, such use was not a violation of due process. The court also noted that the sentencing guidelines allow consideration of information other than the lengths of past sentences to minimize the likelihood of any due process violations. *Id., citing United States v. White*, 869 F.2d 822, 828 (5th Cir.), *cert. denied*, 490 U.S. 1112, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989), *cert. denied*, 493 U.S. 1001, 110 S.Ct. 560, 107 L.Ed.2d

555 (1989). We agree with this reasoning and reject Guajardo's arguments to the contrary.

ii. Equal Protection

■ Guajardo also argues that the application of Section 4A1.2(e)(1) violates his equal protection rights because the sentencing guidelines bear no rational relationship to policies underlying the Sentencing Reform Act.[7] He contends that the use of convictions within this fifteen-year period to classify him as a career offender, while excluding those convictions outside this fifteen-year period, bears no rational relationship to considerations underlying the Sentencing Reform Act.[8]

More specifically, Guajardo argues that Section 4A1.2(e)(1) violates equal protection because the fifteen-year cut-off point is arbitrary and does not truly aid in administrative convenience. By limiting offenses to those that have occurred within fifteen years of the current offense, Guajardo argues that courts employ a categorical federal standard which is arbitrary. Guajardo also contends that Section 4A1.2(e)(1) subverts the sentencing guidelines' goals of honesty, uniformity, and proportionality because Section 4A1.2(e)(1) applies *regardless* of the sentence actually imposed or the length of time actually served.

The Government, *citing United States v. Colon,* 905 F.2d 580, 586 (2d Cir.1990), contends that any system such as the sentencing guidelines requires line-drawing and that the system will fail if those lines are not observed. The Government argues that Section 4A1.2(e)(1) serves a legitimate purpose of having more dangerous criminals serve longer sentences. *See United States v. Litteral,* 910 F.2d 547, 552 (9th Cir.1990). Implicit in the Government's argument is the contention that the career offender provisions bear a rational relationship to a legitimate governmental purpose because the provisions help prevent repeat offenders from continuing to victimize society. Guajardo has not shown otherwise.

The sentencing guidelines support the Government's position. In the sentencing guidelines, the Sentencing Commission states that a defendant with a record of prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment. *See* U.S.S.G. Ch. 4, Pt. A, intro. comment., at 4.1. The Sentencing Commission notes that general deterrence of criminal conduct dictates that a clear message be sent to society that repeated criminal behavior will be punished more severely. *Id.* In addition, to protect the public from further crimes of a defendant, the likelihood of recidivism and future criminal behavior must be considered. *Id.* Repeated criminal behavior is an indicator that rehabilitation may not be successful. *Id.*[9] We find that a district court's consideration of past offenses is related to the goal of having dangerous criminals serve longer sentences; using these prior offenses to calculate another sentence is rationally related to achieving that goal and promotes respect for the law, provides deterrence, and protects the public from further crimes.

B. *The District Court's Refusal to Grant a Downward Departure*

■ This court upholds a sentence unless it is imposed in violation of law, is imposed as a result of an incorrect application of the sentencing guidelines, or is a

---

7. Guajardo does not argue that he is a member of a suspect class or that fundamental rights are involved which would require strict scrutiny. Thus, the standard of review for his constitutional claim is the rational basis test. *See Marshall v. United States,* 414 U.S. 417, 422, 94 S.Ct. 700, 704, 38 L.Ed.2d 618 (1974) (citations omitted).

8. *See infra* note 9.

9. Furthermore, the Sentencing Commission notes that Section 3553(a)(2) of Title 18 sets forth considerations involved in sentencing which include: reflecting the seriousness of the offense, promoting respect for the law and providing just punishment for the offense; affording adequate deterrence to criminal conduct; protecting the public from further crimes of the defendant; and providing the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *See* U.S.S.G. Ch. 4, Pt. A, intro. comment., at 4.1; *see also infra* note 10.

departure from the applicable sentencing guidelines range and is unreasonable. *See United States v. Buenrostro,* 868 F.2d 135, 139 (5th Cir.1989) (citation omitted). This court will not review a district court's refusal to depart from the sentencing guidelines unless the refusal was in violation of the law. *See United States v. Hatchett,* 923 F.2d 369, 372 (5th Cir.1991) (citations omitted).

▮ Guajardo argues that the district court should have departed downward from the sentencing guideline range because of his advanced age and poor health. He argues that these factors are of a kind and to a degree not adequately considered by the Sentencing Commission in promulgating the sentencing guidelines, and that a downward departure is warranted. *See* U.S.S.G. § 5K2.0 (1989). The Government notes that Section 5H1.1 states that age "is not *ordinarily* relevant in determining whether a sentence should be outside the guidelines," and that in this case there is nothing about Guajardo's health or age that warrants such a departure. U.S.S.G. § 5H1.1 (1989) (emphasis added). The Government also cites Section 5H1.4 to argue that physical condition "is not *ordinarily* relevant in determining whether a sentence should be outside the guidelines," or where in the sentencing guidelines the sentence should fall. U.S.S.G. § 5H1.4 (1989) (emphasis added). The underscored language implies that there may be extraordinary circumstances where age and health may be relevant to the sentencing decision. Here, however, there is nothing about Guajardo's age (approximately 55 at the time of sentencing) or health (cancer in remission, high blood pressure, a fused right ankle, an amputated left leg, and drug dependency) that justifies such a downward departure. *See* U.S.S.G. §§ 5H1.1 and 5H1.4 (1989).

▮ Guajardo argues that the district court considered inappropriate factors in imposing the sentence.[10] Guajardo questions comments the district court made during his sentencing. More specifically, the district court stated that "[i]t seems that the only way we're going to take care of this man's [Guajardo's] health problems is to keep him locked up because his self cure is not very good." Guajardo argues that this statement shows that the district court imposed a sentence upon him in violation of the law. Guajardo's argument, however, reflects a twisted view of the district court's reasoning. We find nothing in the record or in the district court's reasoning to suggest that he refused to make a downward departure because Guajardo has health problems. Rather, the district court merely noted Guajardo's history of health problems and stated that one result of his confinement might be an improvement in these health problems—this consideration was clearly not a motivating reason for the sentence.[11] In examining Guajardo's sentence in light of the considerations the Sentencing Reform Act deems relevant in imposing a sentence,[12] we must remember that Congress envisioned that the sentencing guidelines would leave considerable discretion in the hands of the sentencing judge. *Cf. United States v. White,* 893 F.2d 276, 278–79 (10th Cir.1990) (citations omitted). Thus, the issue is not whether we would have departed as such, but whether the district judge's statements reflect a reasoned, persuasive view of statutory and sentencing guidelines considerations.

The district judge's statements reflect such a reasoned view of the statutory considerations. On the one hand, the district court weighed Guajardo's arguments re-

**10.** Guajardo cites Section 994(k) of Title 28 which states:

The Commission shall insure that the guidelines reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant or providing the defendant with needed educational or vocational training, medical care, or other correctional treatment.

28 U.S.C.A. § 994(k) (1968 & Supp.1991); *see also supra* note 9.

**11.** *See supra* note 9, noting that the court, in determining the particular sentence to be imposed, "shall consider ... the need for the sentence imposed ... to provide the defendant with needed ... medical care...."

**12.** *See supra* note 9.

garding his age, health and reasons against a lengthy incarceration. The district court also weighed the seriousness of the offense, the need to protect the public, the need for just punishment, and the goal of deterrence. The result of this process was the imposition of the most lenient sentence possible under the applicable sentencing guidelines range. We are not convinced, therefore, that the district court's refusal to depart downward constitutes a violation of the law.

## III.

Accordingly, we AFFIRM.