United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 3, 2005**

Charles R. Fulbruge III
Clerk

REVISED DECEMBER 14, 2005

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

—————————

No. 03-20944

—————————

UNITED STATES OF AMERICA

Plaintiff - Appellee - Cross-Appellant

v.

RICARDO ANGEL CASTILLO

Defendant - Appellant - Cross-Appellee

—————————————————————————————————————

Appeal from the United States District Court for the
Southern District of Texas, Houston

—————————————————————————————————————

Before KING, Chief Judge, and BARKSDALE and CLEMENT, Circuit
Judges.

KING, Chief Judge:

The United States, Plaintiff-Appellee and Cross-Appellant in
this matter, appeals the district court's decision to depart
downwardly from the sentencing range established by the UNITED
STATES SENTENCING GUIDELINES ("U.S.S.G." or the "Guidelines") on the
grounds that: (1) the defendant's HIV-positive status constituted
an extraordinary medical condition warranting a downward
departure under U.S.S.G. § 5H1.4; and (2) comments made by the
prosecutor at sentencing about the defendant's HIV-positive

1

status were malicious and endangered the defendant's safety, thereby justifying a departure under § 5K2.0.[1] For the following reasons, we find that the district court abused its discretion when it departed downwardly on these bases, VACATE the district court's sentence, and REMAND this case for resentencing.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 12, 2002, United States Customs agents, who had previously received a tip that Defendant Ricardo Castillo would receive two kilograms of heroin from a seaman within the next several days, initiated surveillance on Castillo's Houston apartment and on his boat, the CEC MIRAGE, which was docked at the San Jacinto Port of Houston. On the evening of November 13, the surveillance team followed Castillo to a Wal-Mart store, where they observed him talking on his cellular telephone. At approximately the same time, the surveillance team at the CEC MIRAGE observed Geronimo Lipit, the CEC MIRAGE's chief cook, disembark the boat while carrying a white shopping bag. Shortly thereafter, the surveillance team at Wal-Mart observed Castillo meet Lipit in the Wal-Mart parking lot and get into Castillo's car. Houston police officers then stopped Castillo's vehicle.

---

[1] As explained below, Castillo's attorney filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), in which he stated that, although a notice of appeal originally had been filed on behalf of Castillo, in his estimation an appeal would present no legally nonfrivolous questions. The government subsequently cross-appealed, challenging the district court's downward departure.

After his vehicle was stopped by the police, Castillo consented in writing to a search of the car. The police found two kilograms of heroin sewn inside a pair of men's athletic shorts in the white bag that Lipit had been carrying, which had been placed behind the driver's seat. After waiving his rights, Lipit informed the police that additional heroin was sewn into athletic shorts underneath his jeans. He further stated that the heroin belonged to Castillo, and he informed the police that he and Castillo were going to deliver it to a third party. The total amount of the seized heroin was 3.8 kilograms.

On December 4, 2002, Lipit, in a debriefing with Customs agents, explained how he acquired the heroin. According to Lipit, while the CEC MIRAGE was docked in Colombia, a Colombian man told him that he could earn $5000 by delivering heroin to Castillo. Lipit agreed to this arrangement, picked up the heroin, and delivered it to Castillo after the CEC MIRAGE arrived in Houston. According to Lipit, Castillo was supposed to pay him his $5000 fee after the delivery occurred.

On December 11, 2002, Castillo and Lipit were charged in a two-count indictment with: (1) conspiracy to possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(i), and 846; and (2) aiding and abetting possession with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A). On February 3, 2003, Castillo pleaded guilty to the

3

indictment without a plea agreement.

Prior to sentencing, the parties were provided with a copy of the probation officer's presentence investigation report (PSR), which recommended a total offense level of twenty-nine, a criminal history category of I, and a Guideline sentencing range of 87-108 months imprisonment.  Castillo subsequently filed written objections to the PSR regarding factual matters that did not affect the Guidelines calculation.  On May 9, 2003, Castillo filed an "unopposed motion to continue sentencing and motion to file this motion and corresponding order under seal."  In this motion, Castillo stated that he had provided information to law enforcement and expected that it would lead to a motion for a downward departure from the government.  He asked that the motion be filed under seal "due to the sensitive nature of the information contained herein."  The same day, the district court granted Castillo's request for a sixty-day continuance and sealed the motion and order.

On September 9, 2003, five days before Castillo was scheduled to be sentenced, Castillo filed a "sentencing memorandum and motion to file this pleading under seal."  In this memorandum, Castillo argued that the district court should depart downward from the sentencing range established by the Guidelines for two reasons.  First, he contended that the district court should depart downward because of a disparity between how the government rewarded him for his cooperation versus how it

4

rewarded Lipit for his cooperation.  According to Castillo, both he and Lipit cooperated with the government, but only Lipit stood to receive a motion for downward departure by the government as a result of that cooperation.  Second, Castillo moved for a downward departure under U.S.S.G. § 5H1.4 because he was HIV-positive, which, in his view, constituted an extraordinary physical impairment.  The sentencing memorandum noted that Castillo had been HIV-positive since 1993, had Hepatitis C, and suffered from muscle soreness and a groin rash.  Castillo also noted in his sentencing memorandum that "[t]he probation officer had submitted to the Court a confidential document describing Mr. Castillo's condition."  In fact, the PSR's Second Addendum noted that "a confidential page to the PSR" describing Castillo's condition had been submitted to the court under FED. R. CRIM. P. 32(c)(3)(A).[2]  Specifically, in a sealed envelope attached to

---

[2]     FED. R. CRIM. P. 32(c)(3)(A) refers to the 2002 revised edition of the Federal Criminal Code and Rules.  See FEDERAL CRIMINAL CODE AND RULES 154 (West 2002 2d revised ed.).  FED. R. CRIM. P. 32(d)(3), from the 2005 edition, is the corresponding rule for information that must be excluded from the presentence report. FED. R. CRIM. P. 32(d)(3) states:

> (3)  Exclusions.  The presentence report must exclude the following:
>
>     (A)  any diagnoses that, if disclosed, might seriously disrupt a rehabilitation program;
>     (B)  any sources of information obtained upon a promise of confidentiality; and
>     (C)  any other information that, if disclosed, might result in physical or other harm to the defendant or others.

Castillo's sentencing memorandum was a two-page document entitled "Information Excluded From the Presentence Report Pursuant to Rule 32(c)(3)(A) F.R.C.P." According to the government, this document was never disclosed to it.

On September 15, 2003, the day of sentencing, the government filed its response to Castillo's sentencing memorandum. The government did not file its response under seal. In its response, it stated that Castillo had not provided the government with substantial assistance, and it argued that Castillo's HIV-positive status was not, in and of itself, an appropriate basis for a downward departure under U.S.S.G. § 5H1.4. Unbeknownst to the government, its response to Castillo's sentencing memorandum, along with Castillo's sentencing memorandum, were both sealed by the district court. Although the district court had issued a separate order sealing Castillo's motion for continuance based on cooperation, it did not issue an order sealing either his sentencing memorandum or the government's response. According to the government, it never knew that either its response or Castillo's sentencing memorandum was filed under seal.

Later in the day on September 15, the district court held its sentencing hearing for Castillo. The court, adopting the PSR, first found that Castillo's total offense level was twenty-nine, his criminal history category was I, and the applicable Guidelines range was 87-108 months imprisonment. The district court then asked Castillo's lawyer to speak on her client's

behalf.  She replied that she wanted to discuss the issues raised in her sentencing memorandum but did not want to "go into all the detail that's in there, given that I filed it under seal."  Then, after discussing Castillo's cooperation with the government, she began to discuss Castillo's "condition."  The court inquired if drugs were available at the detention center for Castillo, and Castillo's lawyer, citing her sentencing memorandum, responded that "the very nature of jail conditions is dangerous for a person in his situation."  The court then asked whether Castillo was "currently ill or not currently ill."  Castillo's attorney replied that Castillo's medical records were "pretty vague," that Castillo had "muscle aches and the persistent rash that may or may not be related to his condition," and then said "I don't know."  She also told the court that "I can't say to the court that he qualifies."  The court then asked additional questions about the availability of medications for Castillo, and Castillo's lawyer once again said that "my real argument is that in his current condition, he should qualify for a downward departure given his increased susceptibility in the jail."  After Castillo's counsel finished discussing Castillo's medical condition, Castillo addressed the court and asked for forgiveness.

After Castillo addressed the court, the prosecutor began his presentation, stating first that Castillo had not yet provided the government with substantial assistance.  The court then told

7

the prosecutor that it did not understand the government's

written response to the motion for downward departure on health

grounds and asked for clarification on the government's position.

The following exchange ensued:

> [The prosecutor]: My entire point--and she's right, I couldn't find any Fifth Circuit law on this particular point and so basically what I did was I went to the other circuits, as did she, and in my citation to the <u>United States v. Johnson</u> [sic <u>United States v. Rabins</u>], the Eighth Circuit case--it's cold and it's difficult for me to stand beside Mr. Castillo knowing his physical condition and the sympathy that I have for him, but the fact of the matter is, this isn't the first time in the country that this has happened and they use terms like "full-blown AIDS" and "advanced AIDS" literally in the cases--
>
> THE COURT: Well, you're the first person who said that and you know this is filed under seal.  So, why would you do that in this courtroom?
>
> [The prosecutor]: My apologies.  I did not know that.
>
> THE COURT: Yes, you did know that.
>
> [The prosecutor]: Well, I received a faxed copy from--
>
> THE COURT: No one has said that except for you today.  No one has said that except for you.
>
> [The prosecutor]: My apologies.  It was not--it was thoughtless and--
>
> THE COURT: It was completely unnecessary, thoughtless, and rude.  Y'all have a seat.  I'm going to come back to you.

A forty-five minute recess was then held.  When the court

returned to Castillo's case, the following exchange occurred:

> THE COURT:  All right.  <u>United States of America versus Ricardo Angel Castillo</u>.  We were in the middle of this sentencing in which we were discussing the defendant's sentencing memorandum and specifically the issues that

8

had been raised by [defense counsel] related to the item that was filed under seal that the Court and the lawyers only had permission to know about and review with the specific written permission of the defendant, which we obtained today, specifically the defendant's HIV status and whether or not he had AIDS.

Counsel all are aware of the fact that this information was provided to the Court as a specific separate sealed piece of information that could only be disclosed to the Court under seal with confidence, with the defendant's specific signature. Despite the fact that [the prosecutor] was aware of that, he deliberately in open court, in the presence of many other people, including fellow prisoners of this defendant, disclosed the defendant's status, indicating even the possibility that he might have full-blown AIDS, which is a direct violation of the confidential nature of this type of disclosure.

I can only determine from that action that the counsel acted out of stupidity or maliciously and deliberately to try to disclose that information in front of other prisoners in an effort to create harm or danger for this defendant. [The United States Attorney] assures me that [the prosecutor] is a bright and able attorney, which leaves me with only the choice of it being a deliberate act on counsel's part. And I am going to be taking that into consideration in determining the--counsel's action in determining the appropriateness of departure in this case. I just want counsel to know that.

The court then asked Castillo's lawyer if she had anything to add, and she declined to say anything further. The prosecutor also declined to add anything further. The court, however, was not finished admonishing the prosecutor, and the following exchange then took place:

THE COURT: Okay. Did you know that you weren't supposed to discuss stuff that's under seal, particularly where the only reason that we have it is by virtue of written permission from the prisoner?

[The prosecutor]: Your Honor, I have never received material under seal from defense counsel. I saw--no, I

9

got them in this case. This is the very first time that's ever happened, that I've ever done that in my career. When I got them, I thought that meant they're no longer under seal. It is not my intention to flaunt the Court's order. I honestly--it was an honest mistake. I regret more than you could possibly know any embarrassment that I caused the defendant. It was not my intention.

THE COURT: It's not embarrassment. You put him in potential danger, physical danger by saying that in front of other prisoners. You know that. You can't even imagine that there could be any other outcome of you blurting that out, screaming it out when [defense counsel] and I were specifically careful. You noticed that neither one of us said HIV or AIDS, didn't you?

[The prosecutor]: Honestly, Your Honor--

THE COURT: Did you think there was anything sort of strange about the fact that we were both sort of dancing around the nature of the illness?

[The prosecutor]: I apologize. I don't know what else I can tell you. I've dealt with HIV positive prisoners before in state practice, and it's never done under seal.

THE COURT: Did you know that this is information that's specifically excluded from the presentence investigation report?

[The prosecutor]: No, ma'am.

THE COURT: Nobody told you that?

[The prosecutor]: When I got--my involvement as to the defendant's HIV status began Thursday evening when I received a fax from defense counsel. Prior to that, I didn't know anything about it.

THE COURT: It's not even allowed to be included in the presentence investigation report, which is why you just got it on Thursday evening when you probably got her sentencing memorandum. It can't even be included and given to the Court period, unless the defendant gives me specific written permission to know the information at the time of sentencing which I got this morning, his specific written permission for me to have this information and to consider it in the context of

10

sentencing. It has to be done under seal. It comes in a separate sealed envelope. It's not part of the PSI. It's not supposed to be disclosed publicly.

[Defense counsel] and I went to great lengths to try to make sure that it wasn't--that the exact nature of the illness was not discussed. And you just like thumbed your nose at the whole deal. I was like what's he--I mean, you leave me with only--I can't believe that you would not have understood or known that this was information that was specifically excluded, because you read the presentence investigation report and you saw that it wasn't in there. I mean, did you not surmise that that was there for some reason--that it wasn't in there for a reason?

[The prosecutor]: All I can tell you, Your Honor, is that from my former practice in the state of Ohio, I have dealt with HIV defendants and it was never under seal. It was never my intention to flaunt the Court's order. It was never my intention to violate any rule. I honestly did not know.

The court then granted Castillo's request for a downward departure and sentenced him to fifty-seven months imprisonment. The court stated the following as the basis for its departure:

Although it is not clear to the Court the exact current medical status of [Castillo's] condition, that is, whether he is HIV positive or he has AIDS, the Court is taking that condition into consideration specifically in this case in determining that a downward departure should be granted for two reasons. One, the Court is departing downward under 5H1.4 based on the Court's finding that he has an extraordinary medical condition.

The Court is additionally departing downward under 5K2.0, finding that counsel's action this morning deliberately placed the defendant in danger of--in possible danger and repercussions from fellow prisoners, in that counsel disclosed in the presence of other persons incarcerated with this defendant the nature of the defendant's HIV status, suggesting even the possibility that he might have full-blown AIDS, in a manner that the Court believes is designed to potentially impact his Eighth Amendment rights. And that could place the defendant in unnecessary danger and subject him to needing additional

11

protection, and that a departure on that basis is warranted to avoid any failure to protect issues that might arise from the unauthorized disclosure of his medical condition to other prisoners who were in the courtroom this morning.

Subsequently, the court attached a written statement of reasons to its judgment, noting the following as the grounds for its downward departure:

> The Court finds the defendant has an extraordinary physical condition which warrants a departure pursuant to USSG § 5H1.4. In addition, the Court downwardly departs pursuant to USSG § 5K2.0 and finds counsel for the Government was malicious and deliberate in disclosing the defendant's confidential medical information to the public during sentencing proceedings putting the defendant in danger and repercussion from fellow prisoners which warrants special prisoner protection.

At no time did the government object to the district court's decision to depart downwardly under U.S.S.G. § 5K2.0. Prior to sentencing, the district court advised counsel for both parties that "[t]he lawyers will have a final opportunity to make any objections before the sentence is finally imposed." Immediately following sentencing, the district court gave counsel that opportunity, yet the government made no such objection:

> THE COURT: [D]o you know of any reason why the sentence should not be imposed as stated?
>
> [The prosecutor]: No, Your Honor.
>
> THE COURT: Then the sentence will be imposed as stated.

On March 22, 2004, counsel for Castillo filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), in which he stated that, although a notice of appeal had been filed on

12

behalf of Castillo, he believed that an appeal would present no legally nonfrivolous questions. Accordingly, he moved to withdraw from the case. On September 10, 2004, before the court ruled on the motion to withdraw, the government cross-appealed, challenging the district court's decision to grant Castillo's request for a downward departure. Castillo's attorney responded by submitting a brief arguing that the district court did not commit reversible error by downwardly departing based on Castillo's medical condition and the prosecutor's comments. On March 9, 2005, the court requested counsel for Castillo to file, in light of United States v. Booker, --- U.S. ----, 125 S. Ct. 738 (2005), either a supplemental Anders brief explaining why his appeal was still frivolous or a motion for leave to withdraw his Anders brief and to substitute a brief on the merits of the appeal. Castillo's attorney responded by filing another Anders brief stating that, despite Booker, he still believed that no meritorious issues for appeal exist in this case.

## II. STANDARD OF REVIEW

Castillo was sentenced on September 15, 2003, well before the Supreme Court decided Booker on January 12, 2005. See Booker, 125 S. Ct. at 738. In United States v. Smith, 417 F.3d 483, 488-93 (5th Cir. 2005), we discussed the standard of review that we now use post-Booker when reviewing a district court's

13

decision to depart from the sentencing range established by the Guidelines.  We held that <u>Booker</u> directed us to return essentially to the abuse-of-discretion standard employed prior to 2003, stating:

> Prior to 2003, our review of departure decisions was for abuse of discretion, pursuant to § 3742(e).  In April 2003, Congress amended § 3742(e), altering our standard of review with respect to the departure decision to de novo.  Under this scheme, while the <u>decision</u> to depart was reviewed de novo, the <u>degree</u> of departure was still reviewed for abuse of discretion.  Then, in January 2005, the Supreme Court in <u>Booker</u> excised § 3742(e), leaving the appellate courts to review sentences for reasonableness.  The Court explained that it was essentially returning to the standard of review provided by the pre-2003 text, which directs us to determine whether the sentence is unreasonable with regard to § 3553(a).  Section 3553(a) remains in effect, and its factors guide us in determining whether a sentence is unreasonable.

<u>Smith</u>, 417 F.3d at 489-90.  Subsequently, in <u>United States v. Simkanin</u>, 420 F.3d 397, 416 (5th Cir. 2005), we re-stated this abuse-of-discretion standard for reviewing departures from the sentencing range established by the Guidelines.

Additionally, after <u>Booker</u>, we continue to review a district court's findings of fact in relation to the Guidelines for clear error.  <u>United States v. Creech</u>, 408 F.3d 264, 270 n.2 (5th Cir. 2005).  "A factual finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  <u>United States v. Cooper</u>, 274 F.3d 230, 238 (5th Cir. 2001) (internal quotation marks omitted);

14

see also <u>United States v. United States Gypsum Co.</u>, 333 U.S. 364, 395 (1948). "A district court 'abuses its discretion if it bases its decision on an error of law or a clearly erroneous assessment of the evidence.'" <u>Smith</u>, 417 F.3d at 486-87 (quoting <u>United States v. Mann</u>, 161 F.3d 840, 860 (5th Cir. 1998)); <u>see also</u> <u>United States v. Brady</u>, 417 F.3d 326, 332-33 (2d Cir. 2005) (noting that after <u>Booker</u> a district court exceeds or abuses its discretion in exercising departure authority when "its decision rests on an error of law . . . or a clearly erroneous factual finding, or . . . its decision--though not necessarily the product of a legal error or a clearly erroneous factual finding-- cannot be located within the range of permissible decisions") (internal quotation marks and alterations omitted).

## III. DISCUSSION

The government challenges both of the district court's reasons for downwardly departing at sentencing. First, the government contends that the district court erred in downwardly departing under U.S.S.G. § 5H1.4 based on its finding that Castillo, who is HIV-positive, had an extraordinary physical impairment justifying a departure. According to the government, Castillo's medical condition does not warrant a downward departure under § 5H1.4, the departure is unjustified by the facts, and the departure does not advance the objectives of 18

15

U.S.C. § 3553(a)(2).[3]  Second, the government contends that the district court erred in downwardly departing under U.S.S.G. § 5K2.0 based on its finding that the prosecutor's comments about Castillo's HIV-positive status at sentencing placed Castillo in danger.  According to the government, a departure under § 5K2.0 on this ground is wholly unsupported by the record and does not advance § 3553(a)'s objectives.

Castillo responds by arguing that most of the government's claims on appeal were not made in the district court and should, therefore, be reviewed for plain error.  Castillo then states, in a short and cursory fashion, that the district court did not err when it downwardly departed.  The government replies that it preserved its challenge to the district court's departure under § 5H1.4 by filing prior to sentencing a written memorandum challenging this ground for departure.  The government concedes that it did not object at sentencing to the district court's downward departure under § 5K2.0, but it argues that an objection was not required under the circumstances because the decision to depart was a surprise and making an objection would have been futile.

_____

[3]    The government additionally argues that the district court's departure on both of its stated grounds is impermissible under § 3553(b)(1).  In <u>Booker</u>, however, the Supreme Court excised § 3553(b)(1) of the Guidelines.  <u>Booker</u>, 125 S. Ct. at 764-65.  Accordingly, while § 3553(a) still remains in effect, § 3553(b)(1) is no longer in effect, and we will not consider the government's arguments that rely solely on that provision.

16

## A.    Downward Departure Under U.S.S.G. § 5H4.1

We first address the district court's downward departure on the basis of § 5H1.4. As an initial matter, we note that the government preserved its objection to a downward departure on this ground. First, prior to sentencing, in its written response to Castillo's sentencing memorandum, the government clearly set forth the basis for its objection to a departure under § 5H1.4. Under FED. R. CRIM. P. 51, the prosecutor did not have to reiterate orally this written objection at sentencing or state an exception to the court's ruling in order to preserve the objection for appeal. See FED. R. CRIM. P. 51 ("Exceptions to rulings or orders of the court are unnecessary. . . . A party may preserve a claim of error by informing the court--when the court ruling or order is made or sought--of the action the party wishes the court to take . . . ."). Second, at sentencing, the prosecutor attempted to reiterate orally the objection contained in the government's response to Castillo's sentencing memorandum, explaining that this circuit has not recognized a defendant's HIV-positive status as a ground for departure and that in all cases from other circuits where an HIV-positive defendant received a downward departure under § 5H1.4, the defendant was not only HIV-positive but also had "full-blown AIDS" or "advanced AIDS." It was at this point in the proceedings that the district court interrupted the prosecutor and accused him of maliciously

17

endangering the defendant.  Under this unique set of circumstances, the fact that the prosecutor did not fully state his objection does not render the objection inadequate.  See FED. R. CRIM. P. 51 ("If a party does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party."); United States v. Bernal, 814 F.2d 175, 182-83 (5th Cir. 1987) (holding that an objection was adequate when the judge cut short the objection and the "defendant was not afforded the opportunity to explain his objection fully").

Having concluded that the government preserved its objection to a downward departure under § 5H1.4, we turn to whether the district court's departure on this basis was appropriate.

Section § 5H1.4 states:

> Physical condition or appearance, including physique, is not ordinarily relevant in determining whether a departure may be warranted.  However, an extraordinary physical impairment may be a reason to depart downward; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.

While this court has never addressed the precise issue of whether a defendant who is HIV-positive can be said to suffer from the sort of extraordinary physical impairment that would justify a downward departure under § 5H1.4, our circuit precedent suggests that, without more, being HIV-positive is not a sufficient ground for a departure.

In United States v. Winters, 105 F.3d 200, 208 (5th Cir. 1997), we held that the defendant's "sarcoidosis, a chronic

18

inflammation of multiple organs[,]" did not constitute a physical impairment warranting a departure. In reaching this conclusion, we stated that the district court had failed to explain why the defendant's medical condition "should be treated as an exceptional one." Winters, 105 F.3d at 208. Additionally, we cited our decision in United States v. Guajardo, 950 F.2d 203, 208 (5th Cir. 1991), in which we held that a departure was not warranted for a defendant who suffered from "cancer in remission, high blood pressure, a fused right ankle, an amputated left leg, and drug dependency." Id. (citing Guajardo, 950 F.2d at 208). In the present case, the district court, like the district court in Winters, failed to offer any explanation for why the defendant's medical condition should be treated as an exceptional one. See id. Instead, the district court merely noted that Castillo was HIV-positive, stated that it was "not clear" if he had AIDS, and then, without explanation, summarily granted Castillo's request for a downward departure on the basis that he suffered from an extraordinary medical condition.[4] Because the district court never stated its reasons for granting a downward departure on this ground, we do not know why it felt that a departure was appropriate. In fact, following the logic of cases

---

[4] Castillo's counsel also admitted that nothing in the record indicated that Castillo was suffering from full-blown AIDS. Additionally, Castillo's counsel admitted that while Castillo suffered from a groin rash and muscle soreness, she could not say that these symptoms were related to his HIV-positive status.

19

like <u>Winters</u> and <u>Guajardo</u>, we cannot see how a defendant's HIV-positive status alone constitutes an extraordinary medical condition in light of the fact that, e.g., a drug-addicted individual with cancer, hypertension, no left leg, and a damaged right ankle did not, in our view, suffer from an extraordinary medical condition warranting a departure.  <u>See Guajardo</u>, 950 F.2d at 208.  Moreover, other circuits that have addressed this issue have found that a defendant's HIV-positive status alone is insufficient to justify a departure under § 5H1.4.  <u>See, e.g.</u>, <u>United States v. Hernandez</u>, 218 F.3d 272, 281 (3d Cir. 2000); <u>United States v. Rivera-Maldonado</u>, 194 F.3d 224, 235-36 (1st Cir. 1999); <u>United States v. Rabins</u>, 63 F.3d 721, 729 n.15 (8th Cir. 1995); <u>United States v. Woody</u>, 55 F.3d 1257, 1275-76 (7th Cir. 1995); <u>United States v. Thomas</u>, 49 F.3d 253, 260-61 (6th Cir. 1995); <u>see also</u> <u>United States v. DePew</u>, 751 F. Supp. 1195, 1199 (E.D. Va. 1990), <u>aff'd</u> 932 F.2d 324 (4th Cir. 1991).  We also note that 18 U.S.C. § 3553(a)(2), which is still in effect post-<u>Booker</u>, states that a sentencing court shall consider the need for the sentence imposed:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional

treatment in the most effective manner . . . .

In the present case, the district court's downward departure under § 5H1.4 did not advance the objectives of § 3553(a)(2)(A), (B), or (C).  Moreover, in light of the fact that both the district court and defense counsel stated that the Bureau of Prisons could adequately treat Castillo's medical condition, the downward departure also failed to advance the objectives of § 3553(a)(2)(D).  Accordingly, following the logic of <u>Winters</u>, <u>Guajardo</u>, and our sister circuits, we conclude that a defendant's HIV-positive status alone does not constitute an extraordinary medical condition warranting a downward departure under § 5H1.4, and we find that the district court's departure on this basis, which did not advance the goals of § 3553(a)(2), constituted an abuse of discretion.


**B.    Downward Departure Under U.S.S.G. § 5K2.0**

We turn next to whether the district court abused its discretion when it downwardly departed under § 5K2.0 based on the prosecutor's comments about Castillo's HIV-positive status.[5]  We

---

[5]    Section 5K2.0 permits a district court to depart downwardly "if the court finds that there exists a[] . . . mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."  U.S.S.G. § 5K2.0 (internal quotation marks omitted).  The Supreme Court has held that a district court may grant a downward departure based on an individual's susceptibility to abuse in prison.  <u>See</u> <u>Koon v.</u>

21

begin by addressing Castillo's contention that we must review the government's objection to this departure for plain error because the government did not object below.

FED. R. CRIM. P. 51, which governs the preservation of error in the sentencing context, states that "[i]f a party does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party." The advisory committee notes to FED. R. CRIM. P. 51 state that "[t]his rule is practically identical with rule 46 of the Federal Rules of Civil Procedure" and state that these rules are construed in the same manner, thus making civil cases regarding the preservation of error authoritative with respect to the interpretation of FED. R. CRIM. P. 51. See FED. R. CRIM. P. 51 advisory committee's notes (1944 adoption). With respect to the preservation of error, this court has held that the purpose of a contemporaneous objection is to enable the district court to correct its error in a timely manner. See Hartford Lloyd's Ins. Co. v. Teachworth, 898 F.2d 1058, 1060 (5th Cir. 1990); see also United States v. Mendiola, 42 F.3d 259, 260 n.2 (5th Cir. 1994). Generally, if a party fails to timely raise an issue in district court, we will review it for plain error unless the party made its position clear to the district court and to have objected would have been futile. Russell v. Plano Bank & Trust, 130 F.3d

United States, 518 U.S. 81, 111-12 (1996).

22

715, 720 (5th Cir. 1997) ("A party may be excused from the requirement of making a specific objection only where the party's position previously has been made clear to the trial judge and it is plain that a further objection would be unavailing." (internal quotation marks omitted)); see also Taita Chem. Co. v. Westlake Styrene, LP, 351 F.3d 663, 667-68 (5th Cir. 2003).

In the present case, Castillo never requested a downward departure under § 5K2.0, and the district court never suggested that it would downwardly depart, sua sponte, under § 5K2.0 until the end of the sentencing hearing. Accordingly, the prosecutor had no reason to know that an objection to a departure under § 5K2.0 would be appropriate until the district court began berating him for his comments. Moreover, once the district court began berating him, the prosecutor attempted at least nine times to apologize to the court and to explain his actions, stating that he never meant to harm the defendant. The district court, however, was unmoved by the prosecutor's protestations, interrupted him on several occasions, and clearly did not believe his explanations. Additionally, the district court effectively called the prosecutor a liar, stated that he was "rude" and "thoughtless," and found that he "deliberately" and "intentionally" attempted to harm the defendant. In the words of the district court:

> I can only determine from that action that [the prosecutor] acted out of stupidity or maliciously and deliberately to try to disclose that information in front

23

of other prisoners in an effort to create harm or danger for this defendant. [The United States Attorney] assures me that [the prosecutor] is a bright and able attorney, which leaves me with only the choice of it being a <u>deliberate</u> act on counsel's part. . . . You put him in potential danger, physical danger, by saying that in front of other prisoners. You know that. You can't even imagine that there could be any other outcome of you blurting that out, screaming it out . . . .

(emphasis added). The district court then stated:

This Court is additionally departing downward under § 5K2.0, finding that counsel's actions this morning <u>deliberately</u> placed the defendant in danger of--in possible danger and repercussions from fellow prisoners, that counsel disclosed in the presence of other persons incarcerated with this defendant the nature of the defendant's HIV status, suggesting even the possibility that he might have full-blown AIDS, in a manner that the Court believes is designed to potentially impact his Eighth Amendment rights.

(emphasis added). These sentiments were restated in a written statement of reasons attached to the district court's judgment, which read:

[T]he Court downwardly departs pursuant to USSG § 5K2.0 and finds counsel for the Government was <u>malicious</u> and <u>deliberate</u> in disclosing the defendant's confidential medical information to the public during sentencing proceedings putting the defendant in danger and repercussion from fellow prisoners which warrants special prisoner protection.

(emphasis added). In light of the district court's evident anger, its unusual hostility toward the prosecutor (including its attacks on his personal integrity and truthfulness), its unwavering opinion that the prosecutor had maliciously endangered the defendant, and the prosecutor's protestations to the contrary, requiring a formal objection by the prosecutor--above

24

and beyond his repeated protestations--would have been futile, would not have served the purposes behind requiring contemporaneous objections, and would have clearly "exalt[ed] form over substance." See FED. R. CIV. P. 51; Taita Chem. Co., 351 F.3d at 667-68; Russell, 130 F.3d at 720; Teachworth, 898 F.2d at 1060; 3B CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE, § 842 (2d ed. 2004) ("The general rule requiring counsel to make clear to the trial court what action they wish taken should not be applied in a ritualistic fashion.  If the problem has been brought to the attention of the court, and the court has indicated in no uncertain terms what its views are, to require an objection would exalt form over substance.").  Accordingly, we find that, under the unique set of circumstances presented by this case, the government did not waive its objection to the downward departure under § 5K2.0 by failing to object formally to it at sentencing.

Having concluded that the government did not waive its objection to the district court's downward departure under § 5K2.0, we turn to whether the district court abused its discretion in departing on this ground.  We conclude that the district court's factual finding--that the prosecutor deliberately and maliciously made comments that endangered the defendant's safety--is wholly unsupported by the record and is clearly erroneous.  To begin with, nothing in the record suggests that the defendant was ever endangered.  To the contrary, the

25

government, in its brief on appeal, argues that the public disclosure of Castillo's HIV-positive status would make him <u>less</u> likely to be the victim of a physical attack in prison because other inmates would want to avoid possible exposure to his bodily fluids.

Regardless of whether the government's argument is correct, the fact remains that the record contains not a shred of evidence suggesting that the disclosure of Castillo's HIV-positive status would endanger his safety, and the district court never explained how it knew that the prosecutor's comments would lead to such danger. The district court also did not order the Bureau of Prisons to take any special security precautions with respect to Castillo's incarceration, which suggests that it was not overly concerned about his safety. Accordingly, because the district court's factual finding that the prosecutor endangered Castillo leaves us with a definite and firm conviction that a mistake has been made, it is clearly erroneous. <u>See</u> <u>Cooper</u>, 274 F.3d at 238.

The district court's factual finding that the prosecutor <u>deliberately</u> and <u>maliciously</u> disclosed Castillo's HIV-positive status is also clearly erroneous. No rule in the Southern District of Texas prohibits a prosecutor from disclosing or discussing a defendant's HIV-positive status at sentencing. Furthermore, the district court never ordered confidentiality at sentencing or took any steps to preserve confidentiality at sentencing (such as holding an <u>in camera</u> sentencing hearing or

26

sealing the courtroom).  Likewise, the district court never ordered that the parties refrain from mentioning Castillo's HIV-positive status.  The only rule pertaining to the disclosure of Castillo's HIV-positive status that is potentially applicable to the present case is FED. R. CRIM. P. 32(d)(3), which prohibits the <u>probation officer</u> from including certain confidential information <u>in the PSR</u>.  In accordance with this rule, the probation officer filed information about Castillo's medical condition under seal. This rule, however, imposed no obligations whatsoever on what the prosecutor could say at sentencing.  Moreover, the prosecutor in the present case claims that he did not even know about the sealed information from the probation officer.  When the prosecutor filed his response to Castillo's sentencing memorandum (discussing Castillo's HIV-positive status), he did not file it under seal, and the district court did not issue an order sealing it.  Finally, certain statements made by the district court relating to its factual finding that the prosecutor acted deliberately and maliciously--e.g., its statement that the prosecutor said that Castillo "might have full-blown AIDS, which is a direct violation of the confidential nature of this type of disclosure"--are factually false (e.g., the prosecutor never said that Castillo might have full-blown AIDS).

In short, the prosecutor acted appropriately and did not violate any rule or court order by mentioning the word "AIDS" at

27

sentencing.[6] The prosecutor cannot be said to have acted maliciously or deliberately simply because he failed to understand the impromptu, implicit code system that apparently existed between the district court and defense counsel. Accordingly, based on our review of the record, the district court's finding that the prosecutor acted deliberately and maliciously leaves us with a firm conviction that a mistake has been committed and is, therefore, clearly erroneous. See Cooper, 274 F.3d at 238; see also Creech, 408 F.3d at 270 n.2. Because the factual findings supporting the district court's downward departure under § 5K2.0 are clearly erroneous, the district court abused its discretion by downwardly departing under § 5K2.0. See Smith, 417 F.3d at 486-87; see also Brady, 417 F.3d at 332-33.[7]

Accordingly, we find that the district court abused its discretion when downwardly departing under § 5H1.4 and § 5K2.0. Because § 5H1.4 and § 5K2.0 were the sole bases for the district court's downward departure, we vacate Castillo's sentence and remand for resentencing.

## C. Counsel's Anders Motion

---

[6] In fact, we note that although the prosecutor first mentioned the word "AIDS" at sentencing while discussing relevant case law, it was the district court, not the prosecutor, who first disclosed that Castillo had AIDS.

[7] We also note that the district court's downward departure under § 5K2.0, like its downward departure under § 5H1.4, does not appear to have advanced the goals of § 3553(a)(2). See 18 U.S.C. § 3553(a)(2).

28

Because of our disposition of the government's claims on cross-appeal, as discussed <u>supra</u>, Castillo's counsel now has new obligations to represent Castillo on remand of this case for resentencing.  Accordingly, we deny counsel's motion to withdraw. <u>See</u> <u>Anders v. California</u>, 386 U.S. 738 (1967).

## IV. CONCLUSION

For the foregoing reasons, we VACATE the sentence imposed by the district court and REMAND this case for resentencing.